Dickson et al. v. Chorn et al.

DICKSON et al. v. CHORN et al.

| 6 | 19 |
| 81 | 399 |
| 6 | 19 |
| 104 | 409 |
| 6 | 19 |
| 108 | 221 |

Where a husband and wife mortgage a homestead to secure the payment of a partnership debt, of which firm the husband is a member, and subsequently to the execution of the mortgage, the said firm makes an assignment for the benefit of their creditors, the mortgagee is entitled to a *pro rata* share of the proceeds of the assets of the partnership in the hands of the assignee, and the homestead is only liable for the deficiency.

The mortgaging of the homestead by a husband and wife, to secure a

Dickson et al. v. Chorn et al.

partnership debt—the husband being a member of the co-partnership—and which co-partnership subsequently to the execution of the mortgage, makes an assignment for the benefit of creditors, does not give to the other creditors of the partnership, a right to make liable to their debts the homestead so mortgaged; nor does the *bona fide* release of the mortgaged premises by the mortgagee, and his receipt of a *pro rata* share of the proceeds of the partnership assets, entitle the other partnership creditors, to be subrogated to the rights of the mortgagee under the mortgage.

The rule, that where a creditor has two funds out of which he may make his debt, he may be required to resort to that fund upon which another creditor has no lien, will never be applied, unless it can be done without injustice to the creditors, or other party in interest, having a title to the double fund, and also without injustice to the common debtor.

In order to give a creditor the right to marshal assets or securities, it must appear that such assets or securities were liable to the general debts of the debtor.

Where parties to a suit in equity, and especially the complainant, give to the property in controversy the name of the homestead, and treat it as such, by which its character is clearly shown, it is not necessary for the respondents, to aver or allege that it was actually used as a home.

On the first of March, 1856, C. & D. were doing business as a mercantile firm, and on the 6th of that month, executed their notes to the complainants, for goods sold and delivered. On the first of April, 1856, C. & D. were indebted to J. W. & Co. in the sum of $2,800, and to secure the same, executed to them, a mortgage on certain town lots, the homestead of the said partners, which mortgage was signed by the said C. & D. and their wives. On the 13th day of May, in the same year, C. & D. failed, and made an assignment for the benefit of their creditors to K. & B. On the 22d of July following, J. W. & Co., in consideration of one dollar, released the said premises from the operation of the said mortgage, and presented their said claim to the assignees, who received and allowed the same, as valid and subsisting against C. & D., and the property in their hands. The property mortgaged to J. W. & Co. was sufficient to pay their debt, and was not included in the assignment. The assignees having declared their intention to pay the said J. W. & Co., from the assets in their hands, the same per centum as all the other creditors, a portion of the creditors filed their bill, asking that J. W. & Co shall either abide by their mortgage, and exhaust the security thus given to them, or that they shall be compelled to assign all securities in their hands, for the benefit of all the creditors, and that if said security is sufficient to pay the debt of J. W. & Co., they be compelled to resort to that, and enjoined from receiving any of the proceeds of the property in the hands of the assignees—which bill was dismissed; *Held,* That the bill was properly dismissed.

*Appeal from the Mahaska District Court.*

SATURDAY, APRIL 10.

IN CHANCERY. The cause was heard on bill and answer, which show the facts to be briefly as follows : On the first of March, 1856, Lot A. Chorn and Isaac Dickerson, were doing business as a mercantile firm, in the city of Oskaloosa, and on the 6th of that month, made their notes to complainants for goods sold and delivered. On the 13th of May of that year, Chorn and Dickerson failed, and made an assignment for the benefit of creditors, to Kinsman & Bressler. The form or legal sufficiency of the assignment is not objected to, but petitioners complain of the action of certain creditors. It seems that complainants duly proved before the trustees their claims, and the same were duly allowed, and that the property is not sufficient to pay all the debts. On the first of April, 1856, Chorn & Dickerson were indebted to John White & Co., in about the sum of $2800, and to secure the same, executed to them a mortgage on certain lots in Oskaloosa, the homestead of the said partners, which mortgage was signed by the said Chorn and Dickerson, and by each of their wives. On the 22d of July, 1856, White & Co., in consideration of one dollar, released said property from the operation of said mortgage, and presented their said claim to the trustees, who received and allowed the same, as valid and subsisting, against said Chorn & Dickerson, and the property in their hands. The property so mortgaged, is sufficient in value to pay the debt of said White & Co., and is not included in the assignment. The trustees having declared their intention to pay the said White & Co., from the assets in their hands, the same per cent. as all the other creditors, the complainants file this bill, asking that said White & Co. shall either abide by their mortgage, and exhaust the security thereby given to them, or that they shall be compelled to assign all securities in their hands, for the benefit of all the creditors ; and that if said security is sufficient

to pay their demand, that they be compelled to resort to that, and be enjoined from receiving or taking any of the proceeds of the property in the hands of the trustees. Upon these facts, the court below dismissed the bill, and complainants appeal.

*Wm. H. Seevers* and *Crookham & Fisher*, for the appellants.

The complainants claim that it is well settled, that where a party has a lien on two funds, and another party has a junior lien upon but one of those funds, the former will in equity, be first compelled to exhaust that fund on which the latter has no lien. 1 Story Eq. Jur., sections 562, 563, 564, 558, 559 ; *Evertson* v. *Booth et al*, 19 Johns., 485 ; *Cheeseborough et al* v. *Millard et al*, 1 Johns. Ch., 412 ; *Dorr* v. *Shaw*, 4 Ib., 17 ; *Aldrich* v. *Cooper*, 8 Vesey, 382 ; *Tummer* v. *Bayne*, 9 Vesey 209. The general doctrine laid down in these authorities, is not denied, nor can its applicability to this case be successfully denied.

White & Co. had a clear and undisputed lien upon the mortgaged property, and also a right to receive the amount of their debt from the proceeds, in the hands of the assignees of Chorn & Dickerson. The complainants had no lien on the mortgaged property, nor could they get any. If White & Co. are permitted to receive their proportion of the proceeds in the hands of the assignees, the amount that will be received by complainants from that source, will be much lessened ; and unless they can get their pay from that quarter, they have none other to look to. Complainants claim that it sufficiently appears, that the mortgaged property was amply sufficient to pay White & Co. The petition charges that it was. Chorn, in his answer, says nothing upon the subject, and thus admits it. Dickerson admits it in express terms, and White & Co. deny that it was worth $4000, or sufficient to pay their claim. White & Co. do not show what it was worth—set up no new matter upon this subject—and give it merely as their

opinion. The pleadings clearly show, that Dickerson, as well as Chorn, are interested against complainants; but, viewing them as disinterested parties, does not their answer and silence upon this question sufficiently show, that the property was worth sufficient to pay White & Co.'s claim? Complainants, however, claim that it makes no difference whether the mortgaged property was sufficient or not. It cannot be claimed it was worth nothing. If it was worth anything, White & Co. ought to have exhausted it, or assigned their right in trust to complainants, or have held themselves in a situation that plaintiffs could have paid off their claim, and taken the security. By their own act, they deprived themselves of the power to do either. They had a perfect right to receipt the mortgage, but by so doing they acquired no new rights, or could they be placed in a better situation than they were before.

For a valuable consideration, White & Co. receipted and discharged the mortgage, and gave up what would have paid their debt, and yet say they recovered nothing, nor acquired any additional security for their debt; and that there is no trust, express or implied, by which they have any security, and now look alone to the estate of the insolvents for their pay, which they admit will not pay more than seventy cents to the dollar. It requires the sworn answer of White & Co., at least, to convince one that this proposition is true. The pleadings show that White & Co. are bankers—men of business—conversant with its details. That such men would do so, is past belief. If they did, no one is to blame but themselves, and they alone must suffer the consequences of their folly.

The defendants insist, that however the foregoing propositions may be, yet the decree below is right; for the reason that the property mortgaged was the homesteads of Chorn & Dickerson, and that they, Chorn & Dickerson, could compel them to first exhaust all property in which they had an interest, before selling said homesteads. This proposition is not true, for the following reasons:

1. It is not alleged that said property was used as a

home by Chorn & Dickerson, or either of them. It is nowhere stated that they, or either of them, was the head of a family. It certainly will not be claimed that because they and their wives signed said mortgage, and afterward, on the 13th of May, 1856, signed the deed of assignment, that they were necessarily heads of families when said mortgage was released. Because they were once entitled to the homestead exemption, does not forever give them that right. It is, therefore, confidently claimed, that there is no such averment in the pleadings, as well entitle White & Co., or Chorn & Dickerson, or either of them, to claim said mortgaged property as a homestead.

2. But if there was, then complainants say that no one but Chorn & Dickerson, themselves, can set up this claim. White & Co., nor any one else, can do this for them.

3. Chorn & Dickerson, or either of them, never took any steps to enforce their right, if they had one. Up to the time of the commencement of this suit, such an exemption was unheard of. It was an after thought.

4. By the execution of the mortgage, Chorn & Dickerson and their respective wives, agreed that said property might be sold, and had thus waived their right to said property as a homestead. As between them and White & Co. there can be no question, but that White & Co. had the right to make their debt out of said property, by sale or otherwise. If White & Co., for reasons satisfactory to themselves, choose to give up this right, it is no fault of ours, nor can they be permitted now to say, that they did not possess and have that right. Chorn & Dickerson, and their respestive wives, had the power to convey this property, and by the mortgage, they expressly stipulated that it was liable for the debt of White & Co. This is sufficient. Code, section 1249.

5. Complainants had the right to require, at least, that White & Co. should assign said mortgage to them, or to said Bressler & Kinsman, so that the right of Chorn & Dickerson, or either of them, to the homestead exemption might be contested. This proposition must be true. If

White & Co. had anything, we were entitled to the benefit of it. They should have contested Chorn & Dickerson's right to the homestead exemption, or given complainants, or the assignees of Chorn & Dickerson, the right to do so. Before White & Co. were even threatened or advised, from aught that appears, that Chorn & Dickerson would make such claim, they surrendered and gave up all their claim upon said mortgaged premises. If White & Co. will assign, and have it in their power to do so, the mortgage to Bressler & Kinsman, for the benefit of the creditors of in Chorn & Dickerson, themselves included, then one prayer of our petition is accomplished, and complainants are satisfied.

*E. W. Eastman*, for the appellee.

The debt, in this case, is the debt of Chorn & Dickerson. The security never was partnership property. It is not even the private property of the partners. The lots are the homestead of Lot A. Chorn and Sarah J. Chorn, and of Isaac and Olive Dickerson. These homesteads are the joint property of husband and wife, and any conveyance thereof is of no validity, unless both join in the conveyance. Code, section 1247. It is exempt from judicial sale. Code, section 1245. The homestead is, in substance, an *estate tail;* first, to the survivor, either husband or wife; and second, to the issue of either. Code, sections 1263, 1254; 2 Johns. Ch., 537. The homestead cannot be sold for any lien by mortgage or otherwise, till all the other property is exhausted, which is liable to execution, and then only to satisfy the deficiency, or balance. Code, section 1249.

" Chorn & Dickerson " are, for many purposes, a single legal person, separate from either Lot A. Chorn or Isaac Dickerson. The property of Chorn & Dickerson is, in chancery, except in case of fraud, first liable for the firm debts, while that of Lot A. Chorn, and Isaac Dickerson, is first liable for their respective private debts. Again, Lot A. Chorn may be indebted to the firm of Chorn & Dick-

erson, while, at the same time, the firm may be indebted to Isaac Dickerson. If either of the members of the partnership pays a firm debt with his private property, the debt is not thereby extinguished, but the firm becomes liable to refund to him the amount paid. 6 Mass., 243 ; 1 Story's Eq., sections 675, 676, 677 ; 3 Kent, 65, (margin and note *a*) ; 6 Mass., 243 ; 22 Pick., 453, 454. From this fact, it must follow, that when one partner pledges his private property or individual name, to secure the payment of a firm debt, he is not in equity the original debtor, but only a security for the partnership. And though in law and equity, his private property will be liable to pay any balance due from the firm, after the firm property is exhausted, yet the partnership becomes liable to him, and the other partners become liable to contribute their share. This shows that, in equity, a partnership and the individual members of it, are treated as separate persons, and have separate rights, which equity will protect and enforce. But in this case, other persons besides the individual members of the partnership, have rights to be enforced and protected. The mortgage, in this case, is a security for the firm debt, and it must necessarily follow that the mortgagors are securities for the firm of Chorn & Dickerson. 2 Blackstone, 158 ; 1 Greenl. Cruise, (top,) 546.

The law of Iowa guarantees to a wife the right to hold property separate from, and jointly with, her husband. In this case, Chorn and his wife are, so to speak, partners or joint owners of a homestead. And so with Dickerson and his wife. And these two classes of joint owners have pledged their separate and private property to secure the payment of a debt of Chorn & Dickerson. Two questions here naturally arise : 1. Are those securities equally liable with Chorn & Dickerson, to pay all of those debts ? or, in other words, is the debt of plaintiffs, or of John White & Co., originally, as much the debt of these sureties, as it is of Chorn & Dickerson ? 2. Is there any equity existing which would require these sureties to give this property, by them mortgaged, in payment of the debt,

if it were not mortgaged? And is there any equity whatever to require Olive Dickerson or Sarah J. Chorn to give up this property mortgaged, or any other property which they, or either of them, individually have, to pay either the debt of John White & Co. or the debt of plaintiffs?

It must be admitted that there is not. This property, then, stands exactly in the same position as though any other person had become security, and had mortgaged a farm, or a homestead, to secure the debt; for neither the persons nor the property are, in equity, liable. By marshaling of these securities, then, those sureties will, in equity and in fact, lose all that is taken from them. They will lose just as much as the plaintiffs will gain. To use a common expression, then, will a court of equity "rob Peter to pay Paul?"

Nothing is equitable assets, except what has been made subject to debts generally. 1 Story's Eq., section 552. In this case, John White & Co. have no special lien upon the assets in the hands of the assignees, over the plaintiffs, but stand on an equal footing, legally, with all the creditors, to recover a *pro rata* share; and, by the Code, they cannot resort to this mortgage, until the assets have all been exhausted. Section 1249. But courts of equity do not marshal assets, except when the creditor has a special lien on both funds, so that he could exclude the other creditor from taking a *pro rata* share, with him, of the assets. 1 Story's Eq., sections 558, 562. But when a creditor has an equitable lien, and also is a legal creditor, on an equal footing with the other creditors, courts of equity will not interfere to prevent his legal rights. They only interfere to compel that creditor to divide his legal dividend, with the other equitable creditors of the equitable fund. 1 Story's Eq., 557; Story on Partnership, 364. That would take place in reverse of this case. Suppose that Lot A. Chorn and Isaac Dickerson, and their wives, had each executed a mortgage on the homestead, to secure a private debt, contracted at the time of White's debt, and the mortgages of even date with that of John White & Co.

Those mortgage creditors could not take of the funds of the assignment, and they could compel John White & Co. to divide their legal dividend with them, before he could take equally with them on the mortgage. That clearly establishes the right of John White & Co. to hold their equitable lien on the mortgage in this case, and also take under the assignment. But these plaintiffs have neither a legal nor equitable interest in the mortgaged property. Code, section 1249.

The plaintiffs say: "It is a general rule, that if a creditor has two funds, he shall take his satisfaction out of that fund upon which another creditor has no lien." 1 Story's Eq., section 559. "But though the rule is general, it is not to be understood without some qualifications." 1 Story's Eq., sections, 560, 642, 643, 644, 645; 17 Ves., 520. It is never applied except when it can be done without injustice to the creditor, and also without injustice to the common debtor. 1 Story's Eq., 560, 642. If courts of equity will not do injustice to a " common debtor," it certainly will not to their wives and to sureties. The proper inference from this is, that the securities will not be marshaled at all, unless the property belongs to the same common debtor. And such, in fact, is the true spirit of the law of equity. And hence, unless the debtors are all, at least, morally, (and I might safely say equitably,) entitled to both funds, the court will not marshal the securities. 1 Story's Eq., 560, 562, 634; 4 John. Ch., 19.

The security of John White & Co., in this case, is not the property of the common debtor, Chorn & Dickerson, and it is exempt, both legally and equitably, from being applied on those debts of plaintiffs and of defendants, except for the mortgage; and is, in fact, the pledge of a surety. But courts of equity will never marshal either assets or securities against a surety, but will do so in his favor. 1 Story's Eq., 499, 560, 634, 643, 644, 645. Neither will courts of equity compel a joint creditor to resort to the private fund of one of the joint debtors, so as to leave

the joint fund larger. 1 Story's Eq., 642, 643, 644; 4 Johns. Ch., 19; 17 Ves., 520.

There is one other important consideration. There is a little difference between marshalling assets and marshalling securities. This is a case of marshalling security. The authorities relied upon by plaintiffs, are mostly cases of marshalling of assets, while we refer mostly to those of marshalling securities. It is very seldom that courts of equity marshal assets, except in case the debtor is dead, or perhaps, in some cases of bankruptcy, which is about the same in reference to property. Assets are marshalled only when it is a final end of the debt and fund. The fund, whether more or less, is all applied to all the creditors equitably, in full satisfaction of their claims, and the matter is then forever ended. 1 Story's Eq., sections 560, 261, 568, 571, 633. Securities are not marshalled, unless the persons claiming it have superior equity to the property, over the party from whom they wish to take it. 1 Story's Eq., sections 634, 634 (a.) Chorn & Dickerson are not dead. Neither does this assignment, like bankruptcy, make a final satisfaction of the debts of plaintiffs. There is no condition to the assignment, making it in satisfaction of the debts, and there is no law making it so. Hence, Chorn & Dickerson are both, jointly and severally, liable for all balances unpaid out of this assignment. And it is certain, that the plaintiffs in this case, have no superior equity to these homesteads, over the wives of Chorn & Dickerson, or even over Lot A. Chorn and Isaac Dickerson. For these reasons, it appears to me, that this injunction should be dissolved, and the bill dismissed.

WRIGHT, C. J.—The complainants, in this bill, charge that White & Co. released the mortgage with the intention, and for the purpose of defrauding the other creditors; or that, if this is not true, then, that there was some agreement between them and the mortgagors, by which they were in some manner secured, in consideration of said release. All such averments are, however, explicitly denied

by the several answers of the respondents, and we are left
to determine the rights of the parties, upon the admitted
facts, which are substantially given in the statement of the
case.

The property included in the mortgage, was not covered
by the assignment, and was not liable to the general debts
of the mortgagors. It could only be made liable for the
debts stated in the petition, by a written contract, executed
by the persons having the power to convey, such contract
expressly stipulating that it, (the homestead,) was liable
therefor. And, even in such a case, it could not be sold,
except to supply the deficiency remaining, after exhaust-
ing the other property of the debtor, liable to execution.
Code, section 1249. To make a valid conveyance of such
homestead, the husband and wife must concur in signing
the same. Section 1247.

As a starting point, therefore, we shall regard it as clear
and manifest, that unless the taking of the mortgage, by
White & Co., gives to the other creditors, a right to inquire
into and make liable the homestead of the parties making the
assignment, they could not otherwise disturb their debtors
in its possession and enjoyment. They could not, because it
is, by express provision of the Code, exempt from judicial
sale, except when encumbered in the manner before stated.
Section 1245. And it is not pretended, of course, that in
case of insolvency, it is any more liable than if the owner
was entirely able to pay his entire indebtedness. As to the
general creditors, such property has virtually no place or
existence. It belongs not alone to the husband, but is
wisely set apart, by the law, for the benefit of the family,
and is not to be taken from them, until both husband and
wife shall die, and there shall be a failure of issue them
surviving. Code, sections 1263, 45 ; *Floyd* v. *Mosier*, 1
Iowa, 512.

Does the taking of the mortgage by White & Co.,
change the principles which would otherwise be applicable ?
Is it a matter of any importance to the other creditors,
that White & Co. released this mortgage, assuming that

they have released it, in good faith, and have not taken any other or further security? We clearly think not. If White & Co. had never taken this mortgage, then, as already shown, they would stand in the same position as all other creditors, and would have the same right to their *pro rata* payments from the effects of their insolvent debtors. The right of the other creditors to inquire into the circumstances of the release, (if it was *bona fide*,) or to insist that they shall be permitted to stand in the place of the mortgagees, must, it seems to us, be claimed alone upon the hypothesis, that White & Co. have abandoned a security which is, or should be, liable for the general indebtedness, or to the creditors generally. For if such property could not be made thus liable, what matters it, whether the mortgagees did, or did not, release it. Chorn & Dickerson, and their wives, might, at their option, execute a mortgage upon their homesteads, to any creditor, but it would by no means follow, that every other creditor, by that act, would acquire a right to subject it to the payment of his or their debts. The extent of the incumbrance, in such a case, would be to secure the particular debt named, and the clear policy and spirit of the law would be defeated, if it could be made thereby liable beyond the limitation thus fixed, or if the general creditors could claim to be subrogated to the rights of the mortgagees.

We understand the position of White & Co., and their relation to the property so mortgaged, to be this: In the first place, they were creditors of the firm of Chorn & Dickerson, in the same manner as the complainants. Beyond their general right to claim payment out of the general property, or that liable to judicial sale, they procured a lien upon property declared by law to be exempt from execution, which property was not, however, and could not be, except by the concurrence of the owners, subject to the general debts; neither could it be sold, even under the mortgage, until all other property liable to execution was exhausted. Now, suppose they had not released their lien, would they not have been compelled to exhaust all other

means to obtain payment, before resorting to their mort-
gage ? And if so, had they not a right, and would it not
have been their duty, to present their claim to the trustees,
under the assignment, and take their proportion of the
money arising from the effects in their hands ? Could not
Chorn & Dickerson, if foreclosure proceedings had been
commenced, have compelled the mortgagees to first resort
to the other funds, and insisted that their homesteads were
only liable, under the law, for any deficiency remaining
after exhausting the other property ? And if so, could the
other creditors claim that, inasmuch as the allowance of
the demand of White & Co., and its payment *pro rata*,
had lessened the amount which they would otherwise have
received, therefore, they must be compensated, by being
let into their rights under the mortgage ? It seems to us
not ; but that the mortgage was exclusively a transaction
between the immediate parties to it, and that the other
creditors could in no event claim any advantage or benefit
from it. And the release can in no manner change the
rights of the respective creditors. White & Co. had a
perfect right to execute such a release. As they would
have a right to have their demand paid *pro rata*, while the
mortgage remained in full force, so they would after the
release. The release was for the benefit of the mortgagors,
and upon no fair and legitimate ground could it inure to
the other creditors.

This is not a case where a party has a right to marshal as-
sets or securities. It is true that the general rule is, that
if a creditor has two funds out of which he may make his
debt, he may be required to resort to that fund upon which
another creditor has no lien. Story's Eq. Jur., section 559.
And yet we are not to take this rule without some qualifi-
cations. For instance, it is never applied, unless it can
be done without injustice to the creditors, or other party in
interest, having a title to the double fund, and also with-
out injustice to the common debtor. Ib., sections 560,
642.

Apply the general rule, without the qualification, to the

Dickson et al. v. Chorn et al.

case at bar, and how does it stand.   To compel White &
Co. to resort their mortgage, they must have been in a sit-
uation to make their debt out of the property so mortgaged.
But how can such a rule possibly have any application,
when the law expressly provides, that they shall not resort
to this fund, or shall not enforce this lien, until they have
exhausted the other property.   If it was a mortgage upon
other property, not thus exempt, then the rule might be
applied ; but certainly not, where the law expressly inhib-
its them from enforcing their lien, except upon a contin-
gency that could not occur, while there were any assets
liable to the payment of their debts.   In a word, the diffi-
culty in the whole argument of complainants, is, that it
assumes that the homestead, as well as all the other prop-
erty, ought, by reason of the mortgage, to be thrown into
the common fund, and that they, by that act of their debt-
or, have' acquired some right to control the disposition of
the mortgage; whereas, to our minds, it is a matter of
entire indifference, whether the mortgage was, or was not,
given—was or was not released.   For, if given, and releas-
ed, or not released, the property would still be as complete-
ly beyond their control, or beyond any right of theirs to
interfere with its management, as if it had remained un-
incumbered.   If, by possibility, it could be made liable to
their debts, as a part of the common fund, they might
complain.   But it can work no prejudice to them, nor is it
inequitable or unjust, to hold that White & Co. may release,
at their option, a mortgage upon property which the com-
mon creditors could never, under any circumstances, reach.

And if we apply the further thought, that the general
rule is not to be applied, when it will work injustice to the
common debtor, the argument, we think, becomes conclu-
sive.   The law gives to these debtors, the right to claim
this property as exempt, and sets it apart for the benefit
of their families.   By the concurrence of those who may
convey it, it may be incumbered.   But, by compelling
White & Co. to resort, in the first instance, to their mort-
gage, or by subrogating the other creditors to their rights,

we would defeat the plain policy of the law, and work most manifest injustice to the common debtors. By one act, and in a particular manner, they subjected the exempted property to the payment of a particular debt, but not until all their other property was exhausted. Now, can it be taken from them, after they have succeeded in releasing this incumbrance, and in a manner unknown to the law, and in direct violation of their rights, and the spirit, policy, and letter of the Code?

But, finally, it is urged that there is nothing to show that the premises named in the mortgage, are used as a home by the debtors; and that until this is shown, they are not the homestead, and, therefore, not exempt. The bill charges, however, expressly, that the property so mortgaged was the homestead, and used as a residence by the respective mortgagors. The answers also set up and assert the same fact. Indeed, that the property mortgaged was exempt, as a homestead, or the homesteads of the two members of the firm of Chorn & Dickerson, is an admitted and conceded fact throughout all the pleadings. And if the parties, (and especially the complainants,) have treated the property thus, and given it this name, by which its character is clearly and conclusively shown, it is not necessary for the respondents to aver or allege that it was actually used as a home. If it was the homestead, then, of course, it must have been so used, to give it that character.

Decree affirmed.