WHITE *v.* FULGHUM.

*(Nashville.* February 3, 1889.)

1. HOMESTEAD. *Statutes liberally construed.*

Statutes exempting homestead are construed liberally in favor of the right.

Cases cited and approved: Dickinson *v.* Moyer, 11 Heis., 520; Arnold *v.* Jones, 9 Lea, 548.

(See also 11 Lea, 649, and *ante,* p. 151.)

2. SAME. *In surplus proceeds of mortgaged lands. Reinvestment.*

When lands are sold under decree foreclosing joint mortgage of husband and wife, the mortgagors—if originally entitled to homestead in the *land*—are entitled to homestead in the *surplus proceeds*, if any, realized from such sale; and the fund appropriated to homestead should be reinvested under direction of the Court.

Cases cited and approved: Bentley *v.* Jordan, 3 Lea, 353-363; Fauver *v.* Fleenor, 13 Lea, 624.

3. SAME. *Same. Marshaling securities not enforced to defeat homestead right.*

Where, by joint mortgage, husband and wife have conveyed lands, in which they were entitled to homestead, to secure the husband's debt, the mortgagors are entitled, as against the husband's *general creditors*, to homestead out of any surplus realized at the foreclosure sale; and the equity of marshaling securities will not be enforced in favor of such creditors to defeat this right of the mortgagors.

Cases cited and approved: Gwynne *v.* Estes, 14 Lea, 673; Gilliam *v.* McCormack, 85 Tenn., 609; 6 Iowa, 19; 31 Ark., 203; 23 Minn., 75.

Cited and overruled: Parr *v.* Fumbanks, 11 Lea, 392.

---

FROM CHEATHAM.

---

Appeal from the Chancery Court of Cheatham County. GEO. E. SEAY, Ch.

J. J. LENNOX, ALBERT D. MARKS, and A. S. MARKS for Complainants.

A. E. GARNER, R. S. TURNER, and J. P. HELMS, for Defendants.

CALDWELL, J. This is a bill to marshal securities. Defendant J. H. Fulghum and his wife executed a mortgage upon a tract of land on which they resided to secure a debt of $1,500 to the mortgagee, Wm. Greer.

Thereafter other creditors of Fulghum, with judgments before Justices of the Peace and executions thereon returned *nulla bona,* filed their bill in chancery to foreclose the mortgage by a sale of the land, and to subject the surplus proceeds to the payment of their debts. Foreclosure was refused, because the mortgage had not matured and the mortgagee refused to consent to a sale; but the Chancellor allowed recoveries in favor of complainants for the amount of their debts respectively, and decreed a sale of the land, subject alone to the rights of the mortgagee, and barring the mortgagor's claim to homestead.

On appeal this Court held that the mortgage was a waiver of the homestead exemption as to the mortgagee only, and not as to other creditors, and modified the decree of the Chancellor so as to direct a sale of the land subject to the mortgage of Greer and the homestead of Fulghum. *Hall* v. *Fulghum,* 2 Pickle, 451.

But no sale was made under that decree.

Pending the appeal in that cause, and before the rendition of the decree, Greer's debt matured, and his administrator, widow, and heirs filed their bill to foreclose the mortgage by a sale of the land. That relief was granted, and the Master sold the land, on time, to the complainants in the first cause, taking their notes for the purchase price. The amount of the decree in favor of Greer's estate was $2,035.50, and the price for which the Master sold the land was $3,565.

As their notes matured the purchasers paid into Court a sum sufficient to discharge the mortgage debt, interest and costs.

When they had done this they filed the present bill in the same Court to have the balance due from them on their purchase money notes applied to the payment of their decrees against Fulghum.

The chancellor dismissed the bill for want of equity on its face, thereby sustaining the motion of Fulghum and wife and the demurrer of Greer's administrator. The complainants have appealed.

The theory of the bill is twofold: *First*, that the foreclosure proceedings extinguished Fulghum's right of homestead, and left the surplus of the fund, subject to the debts of the complainants, as non-exempt property; *secondly*, that by his mortgage "Greer had a lien on the whole of the land, *including all exemptions*," while the decrees of the complainants constituted "a lien on the land, *sub-*

*ject to the homestead right,"* and that, under such a state of facts, a court of equity will compel Greer's administrator to first exhaust that part of the fund which represents the right of homestead.

The first proposition is true in part, but it is not true as a whole. Though the sale of the land absolutely and without reservation must, of necessity, have extinguished Fulghum's right of homestead in *the land itself*, it by no means follows that it extinguished his right of homestead in *the proceeds* of the land. The mere fact that the land has been converted into money, and that money, as such, cannot be enjoyed as a homestead, cannot destroy the right of homestead after it has once attached to the land.

The homestead exemption is a favorite in this country, and all laws concerning it are by the Courts liberally construed in favor of the claimant. Thomp. on H. and E., Secs. 4, 7, and 731; 11 Heis., 520; 9 Lea, 548.

The fund realized from the sale of the land represents the land itself, and is subject to the same liens and rights; it stands in the place of the land, and those having an interest in the latter have the same measure of interest in the former. The right of homestead existed in the land, and was subordinate alone to the encumbrance of the mortgage; so it exists in the fund, subject alone to the prior satisfaction of mortgage debt.

Upon the same principle, in cases where the

land has been sold to enforce the lien of the vendor (against which lien the claim of homestead can never prevail. Const., Art. XI., Sec. 2; Code (M. & V.), 2935), this Court has more than once held that the vendee is entitled to an exemption in the residue of the proceeds of sale, and that $1,000 of such residue will be invested, under the directions of the Court, in other real estate as a homestead for the vendee. *Bentley* v. *Jordan*, 3 Lea, 353–363; *Fauver* v. *Fleenor*, 13 Lea, 624.

This mode of investment in a new homestead is in accordance with the policy of the statute, which contains a similar provision for cases where sale under execution or attachment becomes necessary because the property levied on is worth more than $1,000, and is not divisible (Code, 2941); and for other cases where a widow is entitled to both homestead and dower, and they cannot be assigned to her in kind. Code, 2944.

The second proposition advanced in the bill and urged in argument by counsel for complainant rests upon the equitable doctrine of marshaling securities, and its soundness depends upon the applicability of that doctrine to the facts of this case.

The doctrine invoked is well established, both in England and America. It may be briefly stated as follows: Where one creditor has a lien upon two funds or two parcels of other property, and another creditor has a lien upon but one of them, the former creditor will, in equity, be required to seek satisfaction first out of that fund or property

upon which the other creditor has no lien. 1 Story's Eq. Jur., Sec. 633; 3 Pomeroy's Eq. Jur., Sec. 1414.

Treating the gross fund involved in this case as properly divisible into two parts, one representing the homestead and the other the balance of the fund, and agreeing that Greer's mortgage is a lien upon both of them, and that the complainants have a lien upon the latter part only, we have a plain case for the application of the doctrine mentioned, *provided* it should be further agreed that the whole of the fund is subject to the debts of Fulghum as non-exempt property would be.

But it is not all to be treated as non-exempt property. It has already been seen that Fulghum's right of homestead extends to so much of the fund as may be in excess of the mortgage debt, and that $1,000 of such excess is to be regarded as exempt. Then the question is whether or not the doctrine mentioned will defeat the right of homestead in that excess.

While that doctrine is well recognized and far reaching in its effect, it has distinct and plain limitations. *It will not be enforced* to the prejudice of any creditor or third person, or *in such a manner as to do injustice to the debtor himself.* White & Tudor's L. C. in Eq., 4 Am. Ed., Vol. II., part 1, page 205; *Dickson* v. *Chorn*, 71 Am. Dec., 383 (S. C., 6 Iowa, 19); *Gilliam* v. *McCormack*, 1 Pickle, 611.

Now, would it result in *injustice* to the debtor to apply the doctrine in this case? Most manifestly it would. The land has been sold for enough to pay off the mortgage debt, and leave $1,000 to buy him another homestead. He has done nothing to waive his interest in that surplus; nothing to mislead the complainants or impair their rights. As against them he had a homestead in the land when sold; as against them he has an exemption in the fund, unless they may defeat it by this bill.

Again, the right of a creditor to have the assets of his creditor marshaled is but an equity. It is inferior to the lien of a subsequent registered mortgage, and may be defeated by alienation of the land before bill filed to enforce it. 1 Pickle, 602 and 607.

Can an equity of this kind stand against the prior vested homestead right of the debtor? Will it be enforced, in this case, to the entire destruction of a favored constitutional right, long before acquired and never waived or abandoned by the debtor? Certainly not. When the homestead is once acquired it can be lost only by some act of the claimant which, in and of itself, will work its destruction. No independent act of a creditor can have that effect. If he cannot subject the homestead or its proceeds *directly*, he cannot do so *indirectly*, by forcing another to take it. A court of equity will never destroy the right of home-

stead for the sake of enforcing the equity here contended for.

In *Gwynne* v. *Estes* this Court refused to apply the doctrine of marshaling securities so as to defeat the widow's right of dower. 14 Lea, 673.

On principle that case is precisely in point. The widow, in the life-time of her husband, had joined him in a mortgage or deed of trust upon his land, waiving her right of dower. After his death and the foreclosure of the mortgage by sale of the land, she set up a claim to dower in the proceeds. She was held to have waived her right of dower as to the particular debt secured by the conveyance, but not as to the debts of other creditors of her husband. To meet that aspect of the case those other creditors asserted their right to have the securities marshaled, and thereby sought to circumvent the claim of dower.

The Court said this could not be done, though the land had been sold and converted into money; that the widow, being dowable under the statute (Code, M. & V., 3244), in the equitable interest of her husband in the land, was entitled to dower in the surplus proceeds of its sale, and that her right to be so endowed was superior to the equity of creditors sought to be enforced against her.

The same reasoning applies in this case with the same force and justice. The interest of the debtor in the surplus proceeds of the land sold is the same in each case; and while the widow may,

by statute, have dower in an equitable interest in land, so may the debtor, by similar authority, have homestead in the same character of interest. Code, 2937. The right of dower and the right of homestead are cherished rights. They are alike superior to and will alike prevail against the equitable right of creditors under consideration in · this case.

In several cases, where the doctrine of marshaling securities was fully recognized, and would otherwise have been administered in all its force, its application has been refused by the Courts of other States, *because to apply it would be to destroy the right of homestead.* *Dickson* v. *Chorn*, 6 Iowa, 19.; *Marr* v. *Lewis*, 31 Ark., 203; *McArthur* v. *Martin*, 23 Minn., 75.

We have not overlooked our own case of *Parr, Nolen & Co.* v. *Fumbanks*, 11 Lea, 392, nor are we unmindful of the fact that it is in direct conflict with this opinion. In that case the question was fairly presented, and the doctrine here invoked by these complainants was enforced to the destruction of the debtor's right of homestead. But we regard the decision in that case as unsound upon the point just stated, and overrule it to that extent. It has never been followed so far as we are advised. The holding in the case of *Gwynne* v. *Estes*, 14 Lea, 673, where the claim of dower was allowed to prevail against the effort · of creditors to marshal securities, was necessarily a de-

parture in principle from the Fumbanks' case; so was the reasoning in the still later case of *Gilliam* v. *McCormack*, 1 Pickle, 598, though neither of the two referred to the Fumbanks case. The fact is that the opinion in the Gilliam case cites approvingly the above Arkansas and Minnesota cases, and upon them, in connection with other authorities, rests the decision of that case. 1 Pickle, 609.

After payment of the mortgage debt and interest and costs of foreclosure, Fulghum is entitled to have $1,000 of the residue of the fund invested in a new homestead for himself and family.

From the amounts stated in the bill it appears that there will still be something left. The bill may be entertained to subject this balance, and to that extent the decree dismissing the bill will be modified. According to the prayer the bill may be treated as a petition in the cause wherein the mortgage was foreclosed.

Remanded for further proceedings. Two-thirds of accrued costs will be paid by complainants and one-third by Fulghum.