CAROLINE HESTER AND HUSBAND *v.* WILLIAM H. THOMSON.

1. CHANCERY PRACTICE. *Account not contemplated by bill. When proper. Case in judgment.*

    T., a judgment creditor of H., filed a bill to vacate a conveyance of land made by the latter to his wife, as being a fraud upon his rights, and to subject the property to the payment of his judgment. Mrs. H. answered that the conveyance was made to satisfy a debt due her by her husband. The court ordered an account to be taken to ascertain how much was really due her from her husband, with the view of subjecting the property conveyed, so far as its value exceeded such debt, to T.'s judgment. The commissioner, in his account, charged Mrs. H. with the rents of the land conveyed to her, after the

date of T.'s judgment up to the time a receiver was appointed, and credited her with improvements made during that time. She excepted to such accounting, and her exceptions were overruled. *Held,* that such accounting was proper; and although there was no averment or prayer in the bill upon which to base it, it was rendered necessary by the course of the litigation resulting from the claim asserted by the answer.

2. SAME. *Rules of equity as to the administration of relief.*
  The rules by which courts of equity adjust the rights of parties in cases like the one above stated are variant, and seem to depend on the peculiar circumstances of each case, the principle being that justice shall be done according to the view taken of the relative positions and rights of the parties. *Clements* v. *Moore,* 6 Wall. 299, quoted and approved, notwithstanding the *obiter dicta* in *Bernheim* v. *Beer,* 56 Miss. 149, to the contrary.

3. SAME. *Immaterial error. No ground of reversal.*
  A decree in chancery based upon an erroneous account will not be reversed for such error, where it appears that it did not affect the result as to the rights or interest of the party appealing.

APPEAL from the Chancery Court of Hinds County.

Hon. E. G. PEYTON, Chancellor.

This case has once before been in this court, and as then presented is reported in 55 Miss. 656. No better statement of the case can be given, so far as it had then progressed, than that contained in the opinion of the court then reported, which statement was as follows : —

" On March 20, 1869, William Hester, being insolvent, and intending to prefer certain creditors, conveyed to L. K. Barber, by a conveyance absolute upon its face, and for the nominal consideration of $31,000, all the property of which he was possessed, consisting of a plantation in Hinds County and another in Madison, with all the personal property on each, embracing large numbers of horses, cattle, etc., together with an undivided interest in large bodies of wild land in Adams, Yazoo, and Sunflower Counties in this State, and in the parish of East Feliciana, Louisiana.

" The conveyance was made in payment and satisfaction of a debt of $3,000 due to Barber, who was the brother-in-law of the grantor, and of a debt of $8,000 due to Marshal J. Smith, his commission merchant and confidential friend, and of an alleged debt of $19,900 due to the wife of the grantor.

" Barber at once made conveyances to Smith and Mrs. Hester of such undivided interests in the property as were agreed upon between the parties.

" The debts due by Hester and Smith to Barber were genuine ; that alleged to be due to his wife was grossly exaggerated, and the conveyance to her was, therefore, in great part, voluntary and fraudulent.

" William H. Thomson at this time held a note against Hester, upon which there was due about $6,000, and which Hester seems to have regarded as an unjust debt, because given, in part, for slaves.

" In October, 1869, Hester told Thomson that he (Hester) was broke ; that he intended to confess judgment in favor of Barber and Smith, and that the only chance for him (Thomson) to realize anything on his claim was through an arrangement with Smith, who held a note against Thomson, upon which was due about $1,480.  Acting upon the suggestion, Thomson, Smith, and Hester made an arrangement by which Smith surrendered his note for $1,480 against Thomson, and the latter transferred to Smith the note for $6,000 which he held against Hester.  To partly compensate Thomson for the great loss sustained in the exchange, Hester executed to Thomson a new note for $1,400.

" The day after the $6,000 note of Hester was transferred to Smith, Hester confessed judgment on it in favor of Smith, and, execution thereon having been levied upon the Hinds-county lands formerly owned by Hester, the same were sold, and bought in at the sale by Barber, in behalf of himself and Smith and Mrs. Hester, as he testifies, though the deed was made to him alone.  By subsequent arrangements and conveyances between the parties Smith became the exclusive owner of the Madison-county plantation and personalty, Barber of the Louisiana lands, and Mrs. Hester of the Hinds-county plantation and personalty, and of the wild lands in other counties in this State.   Several years afterwards Thom-

son recovered judgment against Hester on the note for $1,400 executed to him at the time of, or a few days after, the exchange of notes above detailed. *Nulla-bona* return having been made thereon, he filed this bill to attack and vacate the several conveyances by which Mrs. Hester had become the owner of the property in Hinds County, and to subject the same to his judgment."

On the former appeal the court held that, " in so far as the property " conveyed to Mrs. Hester by her husband " exceeded in value the amount really due, it is subject to the claims of creditors," and therefore remanded the case to the Chancery Court for an account to be taken to ascertain the amount due Mrs. Hester, and for a decree as indicated in the opinion. Thereupon the Chancery Court referred the case to a commissioner to state such account. In the account taken and reported by the commissioner, Mrs. Hester was charged with the rents of the lands conveyed to her through the arrangement above stated, after the 17th of June, 1873, the date of Thomson's judgment, up to the 16th of March, 1875, when a receiver was appointed. To this accounting as to rents and improvements Mrs. Hester excepted. Her exceptions were overruled. The account embraced many other matters to which exceptions were taken, but the exceptions as to rents, etc., were specially urged, and seem to have presented the only point of law to which this court considered it necessary to respond in the opinion delivered. The bill did not seek to subject the rents received by Mrs. Hester to the complainant's judgment. But her answer claimed that she had gotten since her marriage various sums of money from her father's estate, which had been used by her husband, and which he intended to repay by the conveyance above referred to. And the chancellor considered that, in order to ascertain " the amount really due " her, as directed by this court, it was proper to charge her with the rents received on the land conveyed, and to credit her by improvements made on the land during the time she was receiving the rents.

From the decree on final hearing Mrs. Hester appealed, and assigned for error the action of the Chancery Court in overruling her exceptions to the accounting as to rents, etc., and in confirming the commissioner's report, which contained a clerical mistake, making a difference of $90 against her. Many other points of error were assigned, but those just mentioned present the only questions which it is deemed necessary to report.

*Shelton & Shelton*, for the appellants.

There should have been no accounting for rents and improvements. Our doctrine is that Mrs. Hester owns the property under her purchase of March, 1869, subject only to Thomson's equity against the surplus after she has been paid so much of the nominal consideration as may be found genuine, upon an accounting; and that, subject to such equity, her purchase stands, and she, as owner, is not accountable to Hester's creditors. Any other view of the matter would be inconsistent with the opinion in this case in 55 Miss. 669. In that opinion Mrs. Hester's title is never denounced as being void for fraud, and her title-deeds are not vacated, but are left undisturbed, and she is not required to account for rents. Our position upon this point is sustained by the following authorities: *Bernheim* v. *Beer*, 56 Miss. 149; *William and Mary College* v. *Powell*, 12 Gratt. 375; *Taylor* v. *Moore*, 2 Rand. 563; *Robinson* v. *Stewart*, 10 N. Y. 190; *Herschfeldt* v. *George*, 6 Mich. 456; *Garbutt* v. *Smith*, 40 Barb. 23; 76 Pa. 295; 4 Munf. 258; 2 Stockt. 229; 1 Johns. Ch. 486.

Mrs. Hester owns the land, subject to a contingent equitable charge in favor of Thomson against the surplus, after she has been paid the amount to which she is entitled as above stated. As such encumbrancer, he cannot charge her with rents as an offset to the consideration paid by her, and thus extinguish her title. The owner in possession is entitled to rents until the encumbrancer has had the property sold and the title conveyed to him, or until a receiver has been appointed.

Another position is fatal to the account against Mrs. Hester.

She has, during all of the transactions involved, been a married woman, and her property, being in the form of her husband's liability, has been out of her control ; and the fraudulent purpose against his creditors is not to be imputed to her, but to him alone, and she is not liable to his creditors for rents or profits of the property. And this court has said as much in saying that " the whole scheme was devised by Hester for the purpose," etc. 55 Miss. 669.

Again : Mrs. Hester being a married woman, neither her husband nor the court could make her separate property liable to an offset of rents or profits, except upon proof that she had actually received them. Offset is a cross-action on a converse liability ; and under our statute a married woman is not empowered to create, in the manner here urged, any such liability against herself or her separate property.

But there is another position fatal to the account for rents, etc. It is, *in toto*, outside of and a departure from the pleadings in the case. The bill seeks only to set aside the execution sale as fraudulent, and to make the *corpus* of the .property liable for complainant's judgment ; and neither in the body nor prayer thereof is there a word about rents or profits. And Mrs. Hester's answer does not touch the subject of rents, profits, or improvements. The remedy must be according to the pleadings, and the contest must be confined to the matters therein contained. 12 Smed. & M. 513 ; 2 Bac. Abr. 47 ; Story's Eq. Pl. 32, 35, 36 ; Bump's Fr. Conv. 550 ; 26 Miss. 91.

If the account for rent be allowed, it contains also a clerical error which makes the balance against Mrs. Hester too large by $90.

The court deprived Mrs. Hester of any credit on account of improvements made by her before the date of Thomson's judgment.

True, the court simultaneously denied Thomson all rents before that judgment, as a thing he had no claim on ; but we do not see why that should deprive her of credit for improvements made before that judgment — improvements that sus-

tained and enhanced the rents after the judgment, and which, being on the land still, will enhance its value when sold.

*David Shelton*, of counsel for the appellants, argued the case orally.

*Frank Johnston*, on the same side.

1. There is nothing in the pleadings in the cause to authorize an account of rents. The bill seeks alone a satisfaction of Thomson's judgment out of the *corpus* of the property, on the ground that the conveyance of March 20, 1869, was fraudulent and void as to Hester's creditors.

2. On the former appeal the whole case was before this court, and the decision determined the rights of the parties and prescribed the basis of the account to be taken. Nothing was said or intimated in the opinion of the court about an account for rents, nor about Mrs. Hester's liability therefor.

3. This rent idea is not brought into the case by any facts or events subsequent to the decree on the former appeal. This court had before it, when that decree was rendered, precisely the case that the chancellor had before him when he ordered the account for rents.

4. But Mrs. Hester is not chargeable with any rents for the property in controversy. Thomson, as a judgment creditor, has no estate in the land, but only a lien to enforce the payment of his debt; and his sole right is to sell the property for the satisfaction of his judgment. *Dozier* v. *Lewis*, 5 Cushm. 579. He could not call for an account of the rents and then apply them to the discharge of Mrs. Hester's claim, for he has no right to use the rents for any purpose.

5. If it be said that Mrs. Hester occupies the *status* of a mortgagee, still she is not chargeable with rents. If it be conceded, for the sake of argument, that the judgment creditor is entitled to an account of rents, he could take nothing by it, either when the mortgageor retained the actual control and collected and used the rents for his own purposes, or when the mortgagee, being in the actual possession, applied the rents for the purposes of the mortgageor, with his consent and approval.

In neither case could the mortgageor claim that the mortgage had been paid by the rents; and certainly the judgment creditor can have no higher rights than the mortgageor. 2 Story's Eq. Jur., sect. 1017; *Ex parte Wilson*, 2 Ves. & Bea. 252; *Charles* v. *Dunbar*, 4 Metc. 498; *Bailey* v. *Myrick*, 52 Me. 132; 4 Kent's Comm. 185; *Bernheim* v. *Beer*, 56 Miss. 149; *Bank* v. *Tallman*, 31 Barb. 201; *Hubbell* v. *Moulsey*, 53 N. Y. 225; *Dunn* v. *Tilly*, 79 N. C. 497; *Renard* v. *Brown*, 7 Neb. 449. I deny that Mrs. Hester cannot be regarded as a mortgagee because she is owner in fee of the property to the extent of the valuable consideration. *Davenport* v. *Turpin*, 41 Cal. 100.

6. But if Mrs. Hester be regarded as a trustee under a void and fraudulent deed, she would not be chargeable with the rents of the property conveyed. *Stickney* v. *Crane*, 35 Vt. 89; *Collumb* v. *Reid*, 24 N. Y. 505; *Wakeman* v. *Gunn*, 4 Paige, 23; *Bryant* v. *Young*, 21 Ala. 271.

*Frank Johnston* also made an oral argument.

*T. E. Cooper*, for the appellee.

1. The first objection made by the appellants is that the account of rents was unauthorized, because the bill does not pray for an account, and no statement is made on which, under the prayer for general relief, a decree could be rendered against Mrs. Hester for any balance found to be due by her to her husband.

In reply to this, I say that neither does the answer pray for an account; and, if the rule that there should be no relief except such as is specifically asked by the pleadings was enforced, Mrs. Hester would have been turned out of court without any relief. The relief granted to her is purely an equitable one, and is limited by the object which calls it into life. In effect, she calls us to account touching a claim which has priority to ours, and in such accounting the same principles are applicable as would have been if we had called her to the account. She is entitled to hold the property for whatever may be equitably due to her; and that is due to

her which she has put out and which has not been repaid to her.

2. It is next urged that by the decree of this court Mrs. Hester has been declared to be the owner of the property, subject to the claims of the creditors, who, in turn, are subject to her prior right to reimbursement. In other words, that her title is not declared to be void, but that she is in effect a kind of tenant in common with her husband : she owning an interest in the property proportionate to the amount found to be actually due to her, and he owning that portion as to which the consideration has been declared to be illegal. Every fraudulent grantee is the owner of the property, subject only to the claims of creditors. No matter how gross the fraud as between the grantor and grantee, the title is in the grantee, and he may at any time before actual sale preserve his title by paying off the claims of creditors. Nor is Mrs. Hester made *owner* in any sense by the fact that her *debt* is declared to be a prior lien upon the property. It is to her as *creditor*, against Hester as *owner*, that the debt and lien are given. If she be owner, she cannot be creditor for the very debt which makes her owner. If she be creditor, she cannot be owner of the land which paid the debt. As between Hester and herself, she is, and always since the conveyance has been, owner. As between herself and the creditors, she is owner if she pays their demands ; if she does not pay them, she is simply a preferred creditor.

3. But it is earnestly urged by counsel that Mrs. Hester ought not to have been charged in the account with rents of the property. It has been held in this State that, in a case where the vendee was free from actual fraud, but the conveyance was fraudulent in law, he must account for hire. *White* v. *Trotter*, 14 Smed. & M. 30 ; *White* v. *Trotter*, 4 Cushm. 88. And so in South Carolina. *Croft* v. *Townsend's Administrator*, 3 Desau. 223.

The creditor, it is true, had no lien upon the rents ; but Mrs.

Hester, by her false claim, has intervened between him and Hester's property, and prevented an enforcement of the judgment. She ought not to make a profit from her own wrong. She held in fraud. Whoever comes into possession of an estate conveyed in fraud as to the creditors of the grantor holds the same as trustee, and must account for the rents and profits. 2 Rep. Ch. 30 ; 9 Modern, 83 ; *Sands* v. *Codwise*, 4 Johns. 536 ; *King & Swift* v. *Wilcox*, 11 Paige, 589 ; *Croft* v. *Townsend*, 3 Desau. 223 ; *Van Winkle et al.* v. *Smith*, 4 Cushm. 491. A married woman may be a trustee (Hill on Tr. 43), and shall not profit by the trust. Id. 535.

There is no element of contract from which this liability to account arises. We do not seek to subject Mrs. Hester to a personal decree ; we only say that she, in accepting the favorable position awarded to her by the decree preferring her claim, shall assume the burdens which equity puts upon her, which is, to fairly account for what she has already received on her claim.

When a conveyance is set aside for fraud, the grantee shall not share the proceeds of the property, except upon condition of accounting for what he has received by the conveyance. Sneed (Ky.), 12.

*J. A. Brown*, on the same side.

It is objected to the account for rents that the bill contains no prayer to subject the rents. The decree, however, grants no such relief; nor was such relief ever sought. But the rents which Mrs. Hester has enjoyed constitute an equitable offset against her claim, and were properly credited thereon, to prevent their being paid twice.

It is true that the complainant can have no personal decree against the respondents, nor a decree specifically subjecting property not prayed for in the bill. But Mrs. Hester, the fraudulent grantee, sets up her claim in her answer. This court remands the case, with directions to ascertain the amount thereof ; and the complainant shows that she now has no claim, for two reasons : 1. It was paid in full by the personal prop-

erty which she received with the land. 2. It has since been satisfied by the rents and profits of the land. The cases are all cited in Bump's Fraudulent Conveyancing, 588, 591, par. "Rents and Profits," par. "From what Time Computed," par. "Debt of Grantee," par. "Expenditures," pp. 588–601. The cases cited on p. 588 from Stewart, Grattan, and 15 Iowa hold that the creditor cannot have a money decree against the grantee for the value of property not mentioned in his bill, but if mentioned, he may have such decree under the prayer for general relief; that, *in any event,* the grantee is chargeable with *interest* on the value of the property. On p. 593, sixteen cases are cited which hold that the grantee is liable for rents and profits from the time of the transfer. The case in 35 Pa. St. 262 holds that the grantee is not entitled to any allowance for improvements *as against the land.* In *How* v. *Camp,* Walk. (Miss.) 435, the grantee was charged interest on property converted and rents on that held, but allowed improvements. But the case of *King* v. *Wilcox,* 11 Paige, 589, 595, which is that of a *subsequent* creditor, allows the rents as an offset against the grantee's claim, but not the *increased* rent caused by the grantee's improvements. Such is the rule adopted by this court in analogous cases. *Tatum* v. *Mc-Lellan,* 56 Miss. 352.

The principle upon which this court has proceeded, after vacating a fraudulent sale, is to restore the parties to their original positions, as far as practicable. *Sivley* v. *Summers,* 57 Miss. 732. In the case at bar, the *status quo* is not restored if Mrs. Hester is allowed to assert her entire demand against the land in controversy, without deduction for the rents received by her. She should be charged with the rents of the property.

Opposing counsel insist that Mrs. Hester should be allowed improvements even for those years in which no rents are charged. The character of the improvements is quite important if such allowance should be made, and the proof shows that the commissioner largely over-estimated the im-

provements, and that their actual benefit to the place is very slight, if anything.

*J. A. Brown* also argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

In order to ascertain the amount due Mrs. Hester, it was proper to inquire how much she had received of what was due her from her husband; and although the bill contains no averment or prayer on which to base such accounting, it was rendered necessary by the course of the litigation resulting from the claim asserted by Mrs. Hester in her answer.

The rules by which courts of equity adjust the rights of parties in cases like this are variant, and seem to depend on the peculiar circumstances of each case, the principle being that justice shall be done according to the view taken of the relative positions and rights of the parties. In the language of the Supreme Court of the United States, speaking of the different modes adopted by courts of law and courts of chancery in dealing with fraudulent conveyances, " When the proceeding is in chancery, the jurisdiction exercised is more flexible and tolerant. The equity appealed to, while it scans the transaction with the severest scrutiny, looks at all the facts, and, giving to each one its due weight, deals with the subject before it according to its own ideas of right and justice. In some instances it visits the buyer with the same consequences which would have followed at law; [which are stated, in the opinion quoted from, to be a loss of the property by the buyer, without reference to the amount or application of what he has paid, and without a relief for him, either at law or in equity] in others, it allows a security to stand for the amount advanced upon it; in others, it compels the buyer to account only for the difference between the under price, which he paid, and the value of the property; in others, although he may have paid the full value, and the property may have passed beyond the reach of the process of the court, it regards him as a trustee, and charges him accordingly. Where he has

honestly applied the property to the liabilities of the seller, it may hold him excused from further responsibility. The cardinal principle in all such cases is, that the property of the debtor shall not be diverted from the payment of his debts, to the injury of his creditors, by means of the fraud." *Clements* v. *Moore*, 6 Wall. 299.

We approve the foregoing view, notwithstanding what is said in the opinion in *Bernheim & Co.* v. *Beer*, 56 Miss. 149, upon a question not involved in the case. Bump's Fr. Conv. 588 *et seq.*

After careful examination of the voluminous record, we find in it no error against Mrs. Hester, except as to an item of $90, committed in stating a sum due her; but it does not affect the result. No decree has been made against her, and she is not entitled to anything out of the land as against her adversaries in this suit.

Decree affirmed.