## J. D. HODGES ET AL. *v.* P. M. HICKEY.

1. FRAUD. *Voluntary conveyance. Rights of creditors. Burden of proof.*
   A debtor to defraud creditors, executed a mortgage on land to secure a simulated debt, and afterwards at his instance the mortgagee made a conveyance of the land to a firm, with which the debtor and his wife had various transactions, and this firm finally conveyed the land to the wife. The court finds that she paid nothing for her husband, or to him, as a consideration for the conveyance. Several years afterwards he contracted a debt, and when it was about to ripen into judgment, being advised that the legal title had never passed from him, he, without consideration, executed a deed to her. *Held,* that the wife was a mere volunteer, and that the conveyance was *prima facie* fraudulent as to the then existing creditor of the husband; that the burden of showing a valuable consideration rested on her, and she having failed to meet it, the land was properly subjected to the said debt of her husband. *Cock* v. *Oakley,* 50 Miss. 628, and *Willis* v. *Gattman,* 53 Ib. 721, cited.

2. SAME. *Sufficiency of consideration.*
   The court so holds, although at the time of the firm's conveyance to the wife the husband was not indebted and there is nothing to show that he intended to defraud subsequent creditors; and although at that time, as a part of

the transaction, she conveyed to said firm a house and lot, in satisfaction of a decree held thereon against her, and it was the understanding of all parties that the title to the land in controversy should be vested in her, and she with her husband went into possession of the same.

3. VOLUNTARY CONVEYANCE OF HOMESTEAD. *Not invalid.*
   A conveyance by a debtor of land, part of which is exempt, is valid as to the exempt part, although made with intent to defraud creditors.

4. CHANCERY COURT. *Liens not co-extensive. Enforcement. Marshaling.*
   Where a husband fraudulently conveys land to his wife, which includes his exempted homestead, and they afterwards join in a mortgage on the whole to secure a debt due by her to a person innocent of the fraud, a creditor of the husband, while not able to reach the homestead, is nevertheless entitled to a decree that it shall be first sold under the mortgage, in order that he may subject the other land exonerated, as far as may be, from the prior lien of the mortgage.

FROM the chancery court of Noxubee county.

HON. SYLVANUS EVANS, Chancellor.

The facts as found by the court from the record are stated in the opinion. It is only deemed necessary to add that Mrs. Hodges testified that she would not have given up the house and lot in Macon, in satisfaction of the decree thereon against her, but for the understanding that she was to obtain title to the land in controversy; and that John D. Hodges joined with his wife in the mortgage to J. W. Patty.

*A. C. Bogle,* for appellant.

There are three questions in this case, either of which, if decided in favor of appellant, Mrs. Hodges, will reverse the decree:—

1. There is no evidence tending to show that the transfers made by Hodges prior to the time he contracted the debt upon which this suit is predicated were fraudulent as to appellee, either for want of consideration, or because of an actual fraudulent intent.

2. If such fraud existed, there is not even a claim that Mrs. Hodges knew of or participated in it.

3. John D. Hodges would be estopped from claiming an advantage by reason of any irregularity, or want of consideration in the transfers, and his subsequent creditor is likewise estopped in the absence of direct proof of fraud in which Mrs. Hodges participated.

We deny that the proof is sufficient to show that the trust deed to Randolph was either voluntary or for a fraudulent purpose.

The transfer from Randolph to Bush, Patty & Co. was irregular, yet it was good between the parties. The intent was that the lien or claim was to be transferred to Mrs. Hodges. John D. Hodges agreed to this, and no other parties were interested. 2 Pom. Eq. Jur., § 804.

Bush, Patty & Co. had a valid lien on the land, for which they paid a valuable consideration, and a court of equity would have enforced it. 9 At. Rep. 59 ; 59 Vt. 190. Hodges was estopped to deny their lien. *Railroad Co.* v. *Ragsdale*, 54 Miss. 200. He owed Bush, Patty & Co., and they, having a lien on his land, in consideration of the conveyance by Mrs. Hodges of her house and lot upon which they held a decree, and the payment of money for Hodges, their claim was transferred to her. Certainly this was a *bona fide* transaction as to Mrs. Hodges and Bush, Patty & Co., and there is no evidence of fraud in it on the part of John D. Hodges. The consideration on the part of Mrs. Hodges was the $2000 interest she held in the house and lot, and the $1500 advanced for her husband as part payment on this land. This being the contract between all the parties, and there being a sufficient consideration, after it was executed, Mrs. Hodges could not be disturbed by any one. It is immaterial that there was no previous contract in writing. *Railroad Co.* v. *Ragsdale, supra.*

At that time neither Hodges nor his wife was indebted to any one. Afterwards, before the rights of any creditors or purchasers had accrued, was it not competent for Hodges voluntarily to execute the deed to his wife? In a case like this, where there are no present creditors, an actual intent to defraud subsequent creditors must be shown, and either a want of consideration on the part of Mrs. Hodges or a participation in the fraud of her husband. The first transaction took place more than ten years before appellees became a creditor, and the transfer from Bush, Patty & Co., for which Mrs. Hodges paid a consideration, took place five years before. The whole matter was consummated, and the rights of Mrs. Hodges became vested before Hickey obtained judgment. No matter what

was the purpose of Hodges in executing the deed to his wife in 1887, he was only doing what a court of equity would have compelled him to do, and fraud cannot be predicated of it.

*W. H. Bogle*, on the same side.

1. Mrs. Hodges obtained an equitable title to the land that was good against a subsequent judgment-creditor of her husband. The agreement under which she released her house and lot, in payment of debts partly due by her husband, gave her a title to the land. As against Hodges, she certainly acquired such an equitable title as would draw to her the legal title. *Anderson* v. *Hubble*, 47 Am. Rep. 397 ; 2 Smith's Lead. Cas., 737 ; *Flint* v. *Johnson*, 9 At. Rep. 369 ; 59 Vt. 190.

Hodges was estopped to dispute her title, or to claim any interest in the land. *Maple* v. *Kussart*, 91 Am. Dec. 214 ; *Railroad Co.* v. *Ragsdale*, 54 Miss. 200 ; Pom. Eq. Jur., § 821 ; Bigelow on Est., p. 434.

The creditors of Hodges are likewise estopped. Their rights are derived from him. *Walton* v. *Hargroves*, 42 Miss. 18 ; *McCravey* v. *Remson*, 19 Ala. 437 ; *Grissler* v. *Powers*, 81 N. Y. 59 ; Pom. Eq. Jur., 813 ; Bigelow on Est., 249, 250 ; *Jennings* v. *Sykes*, 2 Dev. & Bat. (N. C.) 151.

It is immaterial whether the trust-deed to Randolph was valid. Complainant Hickey had notice by the records of all the transactions under which Mrs. Hodges claimed. If he had acquired the legal title to the land without notice of these conveyances, he would probably be protected, but he never acquired the legal title, and the deed from Hodges to his wife was made before the judgment was obtained. There could not have been more than $2000 due under the decree for the house and lot at the time of the settlement with Bush, Patty & Co. The difference between that sum and the $3000, at which they took the house and lot, belonged to her. That was sufficient consideration to uphold the conveyance of the land to her.

*Rives & Rives*, for appellee, cross-appellant.

The deed from Hodges to his wife was properly decreed to be fraudulent and void as to the judgment-creditor, Hickey, for the following reasons :—

1. It is a fabricated statement of pretended facts that never existed. 2. Hodges was not indebted to Randolph in the sum of $4000 as it states. 3. No such indebtedness was ever transferred to Bush, Patty & Co. The trust-deed was a sham and a fraud, intended to defeat the collection of a judgment then about to be rendered. 4. Mrs. Hodges never paid or satisfied any such pretended indebtedness, and all the recitals of the deed in reference to a consideration are false. It was claimed in argument that we could not rely upon the fraud of Hodges in the trust-deed to Randolph; but Hodges himself has resurrected these old transactions and made them the foundation of his deed to his wife, and we have a right to show the recitals in reference to them to be false, and the deed itself fraudulent.

The consideration expressed being false, it was not competent to uphold the deed by showing other valuable considerations. They preferred to recite a false consideration with lengthy details of falsehoods, and they should not now be permitted to show any other consideration for the deed.

But even the consideration claimed by defendant will not uphold the deed as against this judgment-creditor. If it be true, as claimed, that in 1879 Mrs. Hodges besides paying her own debt to Bush, Patty & Co., paid them an indebtedness of her husband to the amount of about $1500, and that Bush, Patty & Co. and Hodges thereupon agreed that they would convey this land to her, that is not sufficient as against Hickey to sustain Hodges' deed to his wife made in 1887. Such agreement was not in writing, and was void under the statute of frauds. He could not have enforced it. Therefore a voluntary performance of it by him will not be upheld as against his creditors, for as against them he could not in favor of his wife waive any defense he had at law or equity. *Hill* v. *Bugg*, 52 Miss. 401; *Kauffman* v. *Whitney*, 50 Ib. 108.

Besides, if Hodges ever owed Bush, Patty & Co., the debt was barred before 1887, and her payment of it could not furnish a consideration for his deed to her. But in truth Hodges never owed his wife. She never paid any of his indebtedness to Bush, Patty & Co. Her only payment to them was not equal to her own in-

debtedness to them. The only debt which she ever owed to Bush, Patty & Co. was the decree of Mrs. Phillips which had been transferred to them, and this she paid only by a conveyance of the house and lot bound by the decree, and it is in proof that this property was not worth more than the debt. Certainly Hodges did not owe his wife anything by reason of her making a payment of her debts with the identical property for which the debt was owned. We fail to see how such evidence could furnish any consideration for Hodges' deed to his wife.

Mrs. Hodges could not claim any equitable right or estoppel as against this judgment-creditor. It is admitted that Hickey, believing that Hodges was the real owner of the land, loaned him the money without any security other than his note.

The chancellor erred in relieving the homestead from Patty's claim. It is a familiar rule of equity that where one creditor has a lien upon two funds, or upon two pieces of property, and another creditor has a lien upon but one of these, the first creditor must exhaust that fund or property on which he has an exclusive lien before proceeding against the other. 1 Story's Eq. Jur., 633; 1 Pom. Eq. Jur., 396; 3 Ib., 1413; *Kausler* v. *Ford*, 47 Miss. 289.

We think it unnecessary to inquire as to whether the policy of our laws in reference to exemptions constitutes an exception to the general rule above stated. It could not be treated as an exception in this case without permitting Hodges and wife to profit by their wrong, to take a benefit by their own fraud.

Argued orally by *R. G. Rives*, for appellee.

Cooper, J., delivered the opinion of the court.

The facts of this case, about which there is practically no controversy, are that in the year 1872, John D. Hodges was the owner of the lands in controversy. Suit was instituted against him by a creditor, and, fearing the result of the judgment in the cause, he executed a mortgage to his brother-in-law, one Randolph, to secure a large sum of money ($4000), which he falsely recited to be due him. There was some small amount due Randolph, but he never demanded the execution of the mortgage, and it seems he accepted

$125 in full payment of the debt against Hodges. In 1875 a
decree had been rendered in favor of one Phillips, enforcing a
vendor's lien against Mrs. Hodges upon a house and lot which he
had sold to her for about the sum of $1362 of principal, interest
and costs of court. Phillips was pressing for payment, and
Hodges, acting for his wife, applied to Bush, Patty & Co. to pay
off the debt to Phillips, and to take as security a transfer of the
decree against Mrs. Hodges. Hodges was at the same time in-
debted to Bush, Patty & Co., and desired to secure further advances
from them. It was thereupon agreed between the parties that
Bush, Patty & Co. should pay Phillips, and take an assignment
of his decree ; that Hodges should procure a transfer to them of
the mortgage held by Randolph (not of the debt it secured), which
should stand as security for the sum then due, and for such other
sums as they should advance to Hodges. In conformity with this
contract, Hodges procured Randolph to execute a quit-claim deed
to Bush, Patty & Co. of the lands in controversy. On the credit
of the security thus supposed to be afforded, Bush, Patty & Co.
advanced money from time to time to Hodges, and Hodges made
payments from time to time. The rate of interest charged by
Bush, Patty & Co. was from $1\frac{1}{2}$ to $2\frac{1}{2}$ per cent. per month. All
payments made to Bush, Patty & Co. were made by Hodges, and
nothing seems to have been paid by Mrs. Hodges, either of princi-
pal or interest, on account of her debt to them. In December,
1879, a settlement was agreed on by the parties, whereby Mrs.
Hodges was to convey to Bush, Patty & Co. her house and lot in
full discharge of their debt against herself and Hodges, and Hodges
was to cause title to the lands in controversy to be vested in her.
Accordingly, Mrs. Hodges conveyed her lot to Bush, Patty & Co.,
and they, for the purpose of vesting title in her of the lands in
controversy, executed a quit-claim conveyance thereof to her. The
mortgage to Randolph, the quit-claim from him to Bush, Patty &
Co., and their quit-claim to Mrs. Hodges, were each severally
recorded soon after execution. After this settlement, and the
conveyance executed under it, Mr. and Mrs. Hodges removed
upon the lands in controversy, where they have since resided. In

67 MISS.—46

1885, Hickey, in faith of the ownership by Mr. Hodges of the lands in controversy, loaned to him the sum of $500, taking no other security therefor than Hodges' note. This note was not paid at maturity, and in the year 1887 Hickey instituted suit upon it. A few days before the rendition of the judgment in that suit, Hodges consulted an attorney, and was advised that the legal title to the lands in controversy had never passed from him; whereupon he executed a conveyance to Mrs. Hodges, which was recorded before the rendition of the judgment in favor of Hickey.

After Hickey had recovered his judgment, Mrs. Hodges executed a mortgage upon a part of the lands to secure a debt of $400 contracted by her with J. W. Patty. It is conceded by Hickey that Patty is a mortgagee for value without notice, and is entitled to priority of payment. The consideration recited in the conveyance from Randolph to Bush, Patty & Co. is $4000, paid by them to him. The consideration recited in the conveyance from Bush, Patty & Co. to Mrs. Hodges is the payment by her of the Phillips decree and costs, by the transfer of her house and lot in satisfaction thereof. The conveyance from Mr. Hodges to his wife recites that he was in the year 1872 indebted to Randolph in the sum of $4000, which indebtedness Randolph transferred to Bush, Patty & Co., and that Mrs. Hodges had by agreement between the parties paid and satisfied this indebtedness to Bush, Patty & Co., upon their agreement and that of Hodges to convey to her said lands; that Bush, Patty & Co. made conveyance thereof, but that Hodges had inadvertently omitted so to do, and executed the deed then made in pursuance of the former contract.

The court below held the conveyance from Hodges to his wife fraudulent as against Hickey, and she appeals, and assigns such finding for error. Her contention is that she was a purchaser for value of the lands in controversy at a time when her husband was not indebted; that there is no evidence tending to show that Hodges then intended to defraud subsequent creditors, or, if there is, that nothing is shown from which knowledge of such intent can be imputed to her; that she relied upon Hodges to cause proper conveyance of the land to be made to her, and supposed that the

deed from Bush, Patty & Co. vested title in her ; that Hodges is estopped to deny the sufficiency of that conveyance to vest title in her, and, because he is estopped, so also should be his creditors who claim through his rights to the land ; that a court of equity would have compelled Hodges to make a deed vesting his title in her, and, since he was under this equitable duty, and she had the equitable right to a deed, the conveyance he did make is valid, even though he was impelled to execute it by the suit of Hickey, and even though his purpose was to prevent Hickey from subjecting the land to the satisfaction of his debt.

The argument of appellant's counsel commands our admiration, but, unfortunately for their client, her case does not disclose the essential fact necessary for its support, viz., that she was a purchaser for value. The conveyance executed to her by her husband recites as its consideration the payment by her of the debt secured to Randolph by the mortgage of 1872. The testimony shows beyond doubt that the debt to Randolph was, except a small sum, fictitious ; that on settlement between the parties Randolph received from Hodges $125 in full discharge of all demands ; and afterwards, at Hodges' instance, executed a quit-claim deed to Bush Patty & Co. Going a step back, to the deed executed by Bush Patty & Co. to her, we find the consideration stated to be the payment of her debt to them. There is nothing in either deed suggesting that Hodges owed Bush, Patty & Co. anything except the debt of $4000 originally pretended to be owing to Randolph, and transferred to them, but which it is conclusively shown by extraneous evidence was never paid by them, or intended to be transferred to them. Hodges testified that he never contracted to cause said debt to be assigned by Randolph ; that he would not have been willing that such transfer should be made, since he would have feared to put himself in the power of Bush, Patty & Co. There is nothing in the record tending to show that the parties, or any one of them, ever contemplated or relied upon a transfer of this simulated debt. The extent of their purpose and understanding was that Randolph should convey the legal title to the land to Bush, Patty & Co. as a mortgage to secure to them the payment of

the debt then due them by Hodges, or such as he should thereafter owe them.

The consideration recited in the conveyance from Hodges having been shown to be false, Mrs. Hodges is permitted to show some other valuable consideration for the conveyance made to her. *Leach* v. *Shelby*, 58 Miss. 681. The consideration of one of the deeds is shown to be false, and that of the other (the one from Bush, Patty & Co.) is denied to be true by Mrs. Hodges. Conceding to her, for the purpose of this investigation, the right to attack the consideration expressed in the deed from Hodges, the burden of establishing the existence of the real consideration clearly rested upon her, and this burden she has failed to meet. Viewing the testimony most strongly for her, it only suggests the possibility that, at the date of the settlement with Bush, Patty & Co., Hodges owed them some small sum. The evidence of the persons who should have known the facts (Mr. Hodges, the members of the firm, and their bookkeeper) is exceedingly indefinite and inconclusive. But Hodges produced an account rendered to him in January, 1879, by Bush, Patty & Co. (and no transactions are shown to have been had after that date), and it appears in evidence that the rate of interest charged by that firm was $2\frac{1}{2}$ per cent. per month on short loans and $1\frac{1}{2}$ per cent. on loans running through long time. We have gone through this account and charged Hodges with all the items of debits (except the sum advanced to pay off the Phillips decree), and with interest thereon at $2\frac{1}{2}$ per cent. per month, and credited him with all payments made. Thus examining the account, it appears that Hodges had overpaid his part of the account, in January, 1879, by something over $40. The balance claimed by Bush, Patty & Co. as then due them evidently consisted alone of the debt against Mrs. Hodges and interest thereon. Whether interest be calculated on her debt at $2\frac{1}{2}$ per cent. or at the lower rate of $1\frac{1}{2}$ per cent. per month, she owed, according to the course of business, more than the sum claimed. The account thus examined not only fails to show that Mrs. Hodges paid to Bush, Patty & Co. any sum due by her husband to them, but it is made to appear that his debt had been overpaid,

and that she owed the entire balance of account. It is needless to observe that payment of her own debt with her own property could not furnish a consideration for the conveyance to her by her husband of his estate. These facts being found, it follows as a consequence that Mrs. Hodges occupied the position of a mere volunteer, to whom her husband had promised to cause his land to be transferred, which he attempted to do by procuring Bush, Patty & Co., who had no title thereto, to execute a conveyance to her. No court would have decreed the specific performance of this promise, and no obligation, legal or equitable, rested upon Hodges to peform it. The conveyance executed by him is therefore to be treated as voluntary, and as such it is *prima facie* fraudulent as to his then existing creditors. *Cock* v. *Oakley*, 50 Miss. 628 ; *Willis* v. *Gattman*, 53 Ib. 721. The decree of the court below, in so far as it declared the conveyance to Mrs. Hodges to be fraudulent, is correct and must be affirmed.

The cross-appeal of Hickey is taken to the action of the chancellor in holding that the homestead exemption in the lands sought to be subjected was first to be set off, the remainder sold, and from the proceeds of such sale that Patty was to be first paid, and the remainder, if any, applied to the payment of complainant's debt ; in other words, because the court failed to marshal the securities, and exclude Patty from participation in the proceeds of the lands other than the homestead, until he should first have exhausted the security of the lands constituting the homestead. It is first to be observed that the complainant does not by his bill specifically ask the court for the relief, the refusal to grant which is the ground of his cross-appeal. The bill seeks a sale of the entire tract of land, and, recognizing the priority of Patty's right, asks that his debt be first paid out of the proceeds of sale, and then that the remaining fund be applied to complainant's debt. But it is also to be observed that the answer of the defendants does not set up a claim to the homestead exemption. The possession of Mrs. Hodges is averred in the answer, but the purpose of the averment was to show possession by her under an equitable claim at the time when Hodges borrowed the money from Hickey, and not for the purpose

of founding on it a claim that it was, when the conveyance was made to her, the homestead of Hodges, and therefore not the subject of a fraudulent conveyance. The parties and the court seem to have dealt with the case as made by the evidence, regardless of the issues presented by the pleadings. Ordinarily the cross-appellant could not assign for error the refusal of the court to grant relief he did not ask; but, since in this case relief according to the prayer of the bill would have included, or have rendered unnecessary, the special relief now claimed, and since the defendant has secured a diminution of the general relief prayed, on her testimony alone, and not upon her pleadings, we will examine the question presented, and determine it without regard to the defect of the pleadings. If the decree is erroneous in this respect, the defendant has secured an exemption from some portion of the relief asked by complainant, and to which he is entitled, and, though it may not be the specific error assigned by cross-appellant, it amounts to the same thing. " The rules by which courts of equity adjust the rights of parties in cases like this are variant, and seem to depend on the peculiar circumstances of each case, the principle being that justice shall be done according to the view taken of the relative positions and rights of the parties." Campbell, J., in *Hester* v. *Thompson*, 58 Miss. 108. Relief not expressly prayed may be granted, where rendered necessary by the course of litigation resulting from a claim asserted and secured by the defendant.

We have found the conveyance from Hodges to his wife to be fraudulent and void as against Hickey. But it appears in evidence that a part of the land conveyed was at the time the homestead of Hodges, and, because it was, the creditor had no right to subject it to his debt; and, because he could not subject it, he cannot attack the conveyance thereto as fraudulent. As to this land, Mrs. Hodges is the owner, and her title cannot be assailed by the complainant. It is a mistake to suppose, as has been sometimes suggested, that a court of equity, in proceedings to subject property fraudulently conveyed, cancels the fraudulent conveyance so as to revest title in the fraudulent grantor. This it does not do, but leaves the title where it has been placed by the parties, except in so far as the

superior right of the creditor requires that it should be vacated. As to the exempt property the creditor has no right, and, however corrupt may have been the intent of the grantor, the conveyance is not fraudulent in law, for the law deals only with those frauds by which the rights of others are affected. The conveyance from Hodges to his wife conferred upon her an unimpeachable title to the homestead exemption, but the land other than the homestead she held as trustee *ex maleficio* for the creditors of her grantor, to the extent that it might be necessary for the payment of claims against him. If the conveyance were to be absolutely cancelled and annulled, we could not assent to the right of the creditor to compel the mortgagee of the whole to subject first the homestead exemption to the payment of the mortgage debt, in order that the non-exempt portion might be exonerated in favor of other creditors. To do this would be to extend a mortgage given by the exemptionist upon the exempt property, as security for other debts for which he did not intend to bind it. The rule of marshaling securities is never enforced by courts of equity where to do so would be unjust to the debtor. *Dickson* v. *Chorn*, 6 Iowa, 19. But, since the court does not cancel the conveyance, nor revest title in the grantor, but leaves the title as fixed by the parties, except in so far as the right of the creditor requires it to be impressed with the trust in his favor, we are of opinion that the complainant was entitled to require a sale of that portion of the lands which, when owned by Hodges, constituted his homestead, for the payment of the mortgage debt due to Patty, to the end that the remainder might be applied to his debt. The fact that it was exempt, and therefore not liable to be subjected to his creditors, gave validity to the voluntary transfer of it to his wife; but the influence of this fact terminated with the sale, and neither extended nor limited the power which Mrs. Hodges as owner could thereafter exercise over it. It was her property, absolutely and unconditionally, just as though it had never come to her from her husband. The nature of her right to the exempt and non-exempt portions is not influenced by the fact that both passed by the same conveyance, or that both were conveyed by her husband. As to one, she was owner; as to the

other, she was trustee for the creditors of her husband. Holding a part of the land as such trustee, she has, for purposes of her own, encumbered the whole, and by the decree she has secured has exonerated that part which she owned and had a right to encumber by onerating that with which, as against the complainant, she had no right to deal, and has therefore secured a benefit from her own wrong, at the expense of complainant. If we look at the land as the debtor to Patty, it becomes clear that, as between the two tracts, the exempt and non-exempt, the first is, in the view of a court of equity, the principal debtor, and the other a mere surety. The money raised by the mortgage was borrowed by the owner of the exempt portion, and she committed a fraud upon those having a right to resort to the remainder for the payment of their debts by including it in the mortgage. We recognize the rule that a court of equity will only marshal securities where the creditors are creditors of the same debtor, but it is subject to the exception, that where independent equities exist, from which there arises a duty on the part of one to pay in exoneration of another, the court will enforce it by subjecting the fund of the principal debtor. *Ex parte Kendall*, 17 Ves. 520 ; *Dorr* v. *Shaw*, 4 Johns. Ch. 17.

*The decree is reversed on the cross-appeal of Hickey, and cause remanded.*