## J. E. BUCKLEY & SON ET AL. *v.* J. C. DUNN.

INSOLVENT DEBTOR. *Personal services : gift to wife. No fraud on creditors.*

While an insolvent cannot give away *property* to defeat creditors, they have no claim upon his personal services. He may give to his wife his labor and supervision in a contract with a third person, and creditors cannot predicate fraud thereon, although he may have refused to make the contract in his own right and it was made in her behalf because of the fear that the products thereof would be subjected to a judgment against him.

FROM the circuit court of Clarke county.

HON. S. H. TERRAL, Judge.

Appellee, J. C. Dunn, had a judgment against his son-in-law, George R. Oliphant, who had no property out of which the money could be made. Oliphant, desiring to engage in the business of getting out cross-ties for certain railroads, applied to J. E. Buckley & Son for advances to enable him to carry on the business. Because of the judgment in favor of Dunn, they refused to enter into the desired arrangement with him, whereupon he suggested making the contract and conducting the business in the name of M. E. Oliphant, his wife, and this was done, Buckley & Son advancing the money necessary to conduct the business. As the cross-ties were cut, tickets were given to laborers in payment therefor. These were orders requesting Buckley & Son (who were merchants), to pay

in merchandise to bearer certain sums, and were signed, "George R. Oliphant, Agent." The tickets or orders were sometimes paid in money. When paid, they were taken up in due course by Oliphant, who gave Buckley & Son receipts for the same signed, "George R. Oliphant, Agent." The transactions appeared on the books of Buckley & Son under the respective heading, "Oliphant Cross-tie Acct.," and "Wagon Acct." There was no account on the books in the name of M. E. Oliphant, nor was there any written agreement between her and the·said J. E. Buckley & Son. The only contract with them was that made through the said George R. Oliphant in her name, as before stated. But she assented to the contract and to the transacting of the business in her name. Mrs. Oliphant had no means or property of any consequence, and no business experience. The entire business was managed and attended to by her husband. The contracts for furnishing the ties to the railroad companies were in writing, and were likewise made in the name of "George R. Oliphant, Agent." This was in accordance with the agreement with Buckley & Son that the business should be conducted in the name of Mrs. Oliphant. The ties were cut from a tract of land owned by another party under a contract made by the said "George R. Oliphant, Agent, M. E. Oliphant." George R. Oliphant had an individual account with Buckley & Son, but it was distinct from the cross-tie account and the business conducted in the name of Mrs. Oliphant. After the cross-tie business had been carried on some time, Dunn had writs of garnishment issued on his judgment against Oliphant, and the railroad companies were summoned as garnishees. They answered, denying indebtedness to the defendant, George R. Oliphant, but admitting an indebtedness to M. E. Oliphant, and each of the answers stated that J. E. Buckley & Son claimed the fund under an agreement that they were to be reimbursed from the same for advances made by them to carry on the business. Mrs. Oliphant and Buckley & Son were cited and interposed a claim for the fund, stating therein that there had been no profit in said business, and that Buckley & Son were.entitled to the entire balance due from the railroad companies. An issue was made up and tried as to the right of said

claimants to the fund. On the trial the above facts were shown. Both Buckley, one of the claimants, and the said George R. Oliphant testified that the contract to carry on the business was made in the name of Mrs. Oliphant to prevent the money to be realized thereon from being subjected to the judgment in favor of Dunn.

Among other instructions, at the instance of plaintiff, the court gave the following :—

"If the contract was merely placed in the name of Mrs. Oliphant for the purpose of placing its earnings beyond the reach of G. R. Oliphant's creditors, and if the jury believe that the real contracting party was G. R. Oliphant, and not Mrs. Oliphant, and in good faith on her credit, and that the contract was really G. R. Oliphant's, the plaintiff is entitled to a verdict and the jury will so find."

"Whilst the law cannot compel a debtor who is insolvent to work, and whilst the law recognizes it as the first duty of every man to provide for his family, yet the law does not allow a man to place his services and the fruits of his labor and skill beyond the reach of his creditors by making contracts in the name of his wife as a mere cover, and if the jury believe from all the facts and circumstances that the contract was placed by G. R. Oliphant in Mrs. Oliphant's name merely as a cover to protect its assets from Oliphant's creditors, then the placing of such contract in the name of his wife was to hinder and delay and defraud the creditors of Oliphant, and the debt, in the hands of the garnishee, except the debt of N. O. & N. E. R. R. Co. for 5260 ties delivered January 2, 1890, are liable to the judgment."

Verdict and judgment for plaintiff. Motion for new trial overruled. Buckley & Son and M. E. Oliphant, claimants, appeal.

*Witherspoon & Witherspoon*, for appellants.

The debtor, George R. Oliphant, owed his family a support, and it was perfectly competent for him to give his labor and services to his wife. Creditors had no lien or claim on such services. The fund which was garnished in this case was the fruit of a contract with the railroad companies made in the name of Mrs. Oliphant,

growing out of the personal service of the debtor, her husband. He had a right to give to her such services, and it is immaterial to inquire whether the contract was made in her behalf in order to avoid execution or garnishment under the judgment against him. Assuming that he had the right to give her his wages, it could not be a fraud upon creditors for him to do so. Bump on Fraud. Con., p. 244; *Leslie* v. *Joyner,* 2 Head, 514; *Griffin* v. *Cranston,* 1 Bosw. 281; *Holdship* v. *Patterson,* 7 Watts, 547; *Teeter* v. *Williams,* 3 B. Mon. 562; *Abbey* v. *Deyo,* 44 N. Y. 343; *Rush* v. *Vought,* 55 Pa. 437; *Comm* v. *Fletcher,* 6 Bush, 171; *Webster* v. *Hildreth,* 33 Vt. 457.

It was therefore erroneous for the court to instruct the jury that claimants were not entitled to the money if the contract was made in the name of the wife "as a mere cover." Cover for what? The limitation is senseless. The creditors could not compel Oliphant to make a contract, or to perform services under it, and hence his motive in having it made by his wife, and in giving her the benefit of his services, was a matter with which creditors had no concern.

*T. A. Wood,* and *Fewell & Brahan,* for appellees.

The testimony shows that the contract which George R. Oliphant had obtained was placed in the name of his wife, for the express purpose of placing its avails beyond the reach of his creditors. Buckley & Son refused to make the contract with him because of the existence of plaintiff's judgment. Whereupon Oliphant proposed to put the contract in the name of his wife, who had no property, no credit and no business experience. Buckley himself testifies that the purpose of putting the contract in the name of Mrs. Oliphant was to place it beyond the reach of her husband's creditors.

The contract having been made by the husband, but in the name of his wife, the arrangement was merely colorable. The avails or profits of the contract were to go to the payment of George R. Oliphant's debt to Buckley & Son. The law, viewing the substance and not the form, will condemn the avails as subject to the payment of his debts, just as if the contract had been made in his name.

It is not necessary for the court to decide whether an insolvent's services are to be subject to the demands of creditors, nor whether a husband can do business in his wife's name, and thus place his earnings beyond the reach of creditors. The property in controversy here was in the name of the wife only colorably, being put in her name for the express purpose of avoiding the husband's debt. We contend that it would be liable even if the contract had been in the name of some third person, thus relieving the question from the suspicion which attaches to transactions between husband and wife. The property would be subject to the debts of the person who was *really* a party to the contract.

The court will note the very significant fact that the alleged contract between Buckley & Son and Mrs. Oliphant was not in writing. Her name did not appear on their books. " Oliphant's Cross-tie Acct." appeared on the books, without anything to designate that Mrs. Oliphant had anything to do with it.

The question of fact in the case was fairly submitted to the jury, and was properly decided. We submit that the judgment should be affirmed.

COOPER, J., delivered the opinion of the court.

Since the law undoubtedly is that creditors have no lien upon or right to the labor of their debtors, we are unable to perceive upon what principle the creditor can subject to his debt the product of that labor where, when it comes into existence, it is the property of another. The creditor cannot impute fraud to the transaction by which the debtor gives his labor to his wife, for the creditor has no legal or equitable right to that labor. If by his labor the debtor produces property which is his own, he may not give the property thus produced to the wife to prevent it being subjected to his debts. But this is because the law recognizes an equity in the creditor to be paid out of such property. It is quite a different proposition to assert that creditors have a right to the personal labor of their debtors, and that if the debtor gives that to another, the creditor may complain as of a fraudulent scheme to defeat his demand.

It is perfectly clear that Oliphant refused to make the contract

out of which the debt garnished arose, because of the apprehension that the product of the contract would be subjected to the appellee's judgment. It is equally certain as a principle of law that the creditor could not coerce him to make it or to'perform any labor under it when made by the wife. It is impossible to change the nature of the thing done by epithets. Oliphant might lawfully have refused to make the contract to supply the cross-ties to the railroads, and so, also, he could lawfully give to his wife his labor and supervision in the execution of the contract made by her, and this whether the contract was made by her acting personally or by her acting through her husband as her agent. Calling what was done " a fraudulent device" or " cover" cannot change its nature nor the legal results that flow from it.

The verdict and judgment should have been for the claimants.

*Judgment reversed and cause remanded.*