## J. N. BARWICK *v.* I. MOYSE & SONS.

1. MORTGAGE. *Foreclosure. Defense.*

   In a suit to foreclose a mortgage, if the mortgagee makes out a *prima facie* case not disclosing fraud, the mortgagor cannot successfully defend by showing that the deed was executed to defraud his creditors, and that the mortgagee was a party to the fraud.

2. FRAUDULENT CONVEYANCE   *Good between parties.*

   Though a mortgage be executed with intent to defraud the creditors of the mortgagor, it is nevertheless good between the parties.

FROM the chancery court of Amite county.

HON. CLAUDE PINTARD, Chancellor.

The facts are stated in the opinion of the court.

*Theodore McKnight*, for appellant.

The test of the character of the transaction in giving the note and recording the deed for more than the true amount, admitting the $620.52 to be the true amount due Moyse, is, was it such as would have been held as fraudulent as against the cred-itor of Barwick, had such creditor attacked the same for fraud therein.    If so, then the act is of such a character that a court of equity should leave the parties thereto where it finds them.    *Watson* v. *Tusten*, 49 Miss., 576, and 8 Am. & Eng. Enc. L., 771, and authorities there cited.    Fraud avoids, both at law and in equity, every contract, however solemn.    W., 72; 5 H., 673; 1 Smed. & M., 443; 2 C., 504.    Even judgments or decrees obtained by fraud will be set aside.    5 H., 365, 562; 3 Smed. & M., 695; 3 G., 180; 5 G., 101.    A person innocent himself of fraud cannot hold property, or an advantage gained for him, by the fraud of another.    *Planters' Bank* v. *Neely*, 7 H., 80.

"Fraud renders a contract voidable *ab initio*, both at law and in equity, whether such fraud were committed by one of the contracting parties upon the other; or by both upon persons not parties thereto; for the law will not sanction dishonest views and practices, by enabling an individual to acquire any right or interest by means thereof."    Chitty on Contracts (11th ed.), p. 1035.

If Barwick had only owed Moyse one cent, and this were all that Moyse claimed, they would have had the same right, if they have any, to have taken Barwick's note for $1,220.52, secured by deed in trust on his lands, in fraud of his creditors, as they had to do so for the sum of $620.52.    The principle is exactly the same, and to enforce either would be to "sanction dishonest practices."    There is a vast distinction between a case where the consideration is merely fictitious, and not made for a fraudulent purpose, and one where fraud is the object in whole or in part to be accomplished by the execution of the conveyance.    The first, in the absence of fraud, might be

enforced, but the latter never, because of the fraud.  Equity will not assist a party to a fraud.  *Lawrence* v. *Hand*, 1 Cush., 103.  Appellees did not come into equity "with clean hands."

*Chas. E. Williams* and *Will A. Parsons*, for appellees.

On the question of law in this case we submit that, where the complainant in a court of equity is able to make out his *prima facie* case without disclosing any fraud, on principle and authority, it is not competent for the defendant to set up his own fraud, though participated in by the complainant.  Bigelow on Fraud, vol. 1, pp. 200, 206; *Harvey* v. *Varney*, 98 Mass., 118; *Dyer* v. *Homer*, 22 Pick., 253.  In *Harvey* v. *Varney*, *supra*, the court says: "Defendants in equity cannot be allowed to prove that a stock of goods was transferred from one firm to another to hinder, delay, or defraud creditors.  In an action to foreclose a mortgage made to defraud creditors, where the mortgagee can show a *prima facie* case without revealing the fraud in the transaction, the defendant will not be permitted to plead as a defense his own and the complainant's fraudulent intention, and that the mortgage was without consideration.  Wiltsie on Mortgage Foreclosure, p. 429.  The defendant in a proceeding to foreclose a mortgage cannot set up his own and the mortgagee's fraud in making the mortgage.  *Bonesteel* v. *Sullivan*, 104 Pa. St., p. 9.  In that case the court says: "The complainant stands apparently on a *bona fide* transaction, whilst the defendant, in the very first step in his defense, is obliged to exhibit his own fraud, hence he cannot gain the ear of the court."  The same doctrine is held in *Williams* v. *Williams*, 10 Cas., 312; *Gill* v. *Henry*, 14 Nor., 388.  A conveyance or transfer by way of mortgage in fraud of creditors is not regarded as *turpis causa*, which renders all contracts void.  It is merely voidable only, in favor of the defrauded creditors, leaving it in all other respects, and as between the parties, valid, the fraud being available only to those injured by it.  Beach on Modern Equity Jurisprudence, vol. 1, p. 471; *Delvin* v. *Quigg*, 20 Am. St.

Rep., 592; *Livingston* v. *Ives*, 35 Minn., p. 55. The doctrine
we contend for was recognized in the case of *Walker* v. *Brun-
gard*, 13 Smed. & M., 723.

STOCKDALE, J., delivered the opinion of the court.

Appellees filed their bill in the chancery court of Amite
county to foreclose and enforce a deed of trust given by appel-
lant, on December 5, 1891, to J. M. Ellzey, trustee, for ap-
pellees, to secure a note of that date, payable December 1,
1892, for $1,220.52. Said note bore a credit of $600 from
date, and the bill sought to collect the balance, $620.52, and
interest. Appellant (defendant below) answered said bill at
the July term, 1895, of said court, and set up as defense
thereto, after admitting that he executed the note and deed of
trust described in the bill of complaint, that he owed appel-
lees nothing, and the said note, and credit on it, and deed of
trust, were fictitious and without consideration, and were both
executed for the purpose of preventing Adler, Goldman & Co.,
of St. Louis, whom appellant owed a considerable sum, from
seizing and selling his lands, and for no other purpose, and that
the suggestion to do that came from Julius Moyse, one of com-
plainants; that he has settled with Adler, Goldman & Co. satis-
factorily; that he had been dealing with I. Moyse & Sons for
several years, and no settlement was had between them on the
fifth of December, 1891; that they had failed to give him
credit for fourteen bales of cotton delivered November 2, 1889.

The answer was made a cross bill, with a prayer that the
deed of trust be removed, as a cloud upon his title, and the
note canceled. Appellees answered the cross bill, denying
every allegation thereof as to fraud, and asserting that they
had a full settlement with appellant on December 5, 1891,
upon which he owed them $620.52, and that he agreed to give
his note for that amount, and secure it on lands, in considera-
tion of extension; that, when appellees were having the deed of
trust drawn up, appellant asked them to add $600 and make

the note $1,220.52, and make the deed to correspond, and then give him credit on the note for $600, which they did, to accommodate him, not knowing why he asked it, nor what was his object, and had no intimation of anything like fraud, or delay or hindrance of other creditors.  Denied receiving the fourteen bales of cotton.  They denied that the suggestion came from them about making the note $1,220.52 instead of $620.52. The bill and answer and cross bill, and complainants' answer to defendant's cross bill, are all sworn to.  At the January term, 1896, the cause was set down for final hearing, and tried on May 7, 1896.  The depositions of Julius Moyse were suppressed because he failed to appear and testify in open court upon notice to do so, and the chancellor heard the testimony on both sides in open court and went into a full investigation of the accounts and transactions between the parties, and took the matter under advisement, decree to be entered in vacation.  The final decree was entered August 27, 1896.  By this final decree the cross bill of defendant was denied and dismissed, and a decree rendered on the bill and answer and proofs, awarding relief to complainants, and that the sum of $882.84 is due them from defendant, and that the land described in the deed be sold if the debt be not paid; and from that decree this appeal comes.

In view of the fact that the chancellor heard the witnesses testify, and considered the case deliberately, under advisement, we do not feel warranted in disturbing his findings on the facts, after a careful examination of the evidence.  But counsel for appellant claims and urges that, even if the facts as to the indebtedness would justify a decree in favor of appellees, they were not entitled to a decree in equity, but their bill should have been dismissed; for it is apparent, he insists, that appellant and appellees were both intent upon delaying the collection of their debt by Adler, Goldman & Co.  That proposition involves the correctness of the decree of the chancellor in dismissing the cross bill; for by the dismissal of the cross bill the alle-

gations in reference to Adler, Goldman & Co. were eliminated from the controversy. And we will inquire into that action first, and then determine whether the authorities cited by counsel for appellant have a bearing on this case.

The contention of appellees' counsel is that, complainants below having been able to make out a *prima facie* case without discovering any fraud, if there were any, and, the allegations of fraud being first brought into court by defendant, he cannot be heard to set it up in defense of complainants' *prima facie* case. That must have been the ground upon which the court below dismissed the cross bill, and proceeded to try the case as to the indebtedness between the parties. It is laid down (Bigelow on the Law of Frauds, p. 200 *et seq.*) as a general rule "that a party cannot set up his own fraud as a ground upon which to rest his action or defense." It is laid down as the law in Wiltsie on Mortgage Foreclosures, p. 429, that "in an action for foreclosure, where the mortgagee can show a *prima facie* right to recover on the face of the instrument, without revealing the fraud in the transaction, the defendant will not be permitted to plead as a defense his own and the plaintiff's fraudulent intention, and that the mortgage was without consideration."

In *Harvey* v. *Varney*, 98 Mass., 118, it is held that in that commonwealth "a long series of cases has established the rule that a transfer of either real or personal property, made with a view to defraud the creditors of the grantor, although the grantee has participated in this intent, is good between the parties, and void as against creditors only, or, to speak accurately, is voidable by creditors at their election." And this doctrine prevails as to executory contracts as well as to executed contracts, although entered into to prevent the creditors of the vendor from attaching the property. *Id.*, and cases referred to. A mortgage for more than the amount due, and a mortgage in fraud of creditors, are not regarded as *turpis causa*, which renders all contracts void. They are merely voidable in favor

of creditors, leaving them, in all other respects, and as between the parties, valid.    1 Beach Mod. Eq. Jur., pp. 470, 471.

In *Bonesteel* v. *Sullivan*, 104 Pa. St., 9, the court said: "Sullivan could not set up his own fraud to defeat the mortgage.    If it was given to hinder, delay, or defraud creditors, as seems to have been the fact, Bonesteel, whose case rested upon this mortgage, *prima facie* executed in good faith and for value, could recover."    Though a participant in the fraud, he apparently stands on a *bona fide* transaction, while the latter, as the very first step in his defense, is obliged to exhibit his own fraud; hence he cannot gain the ear of the court.    It follows that the mortgage in the case in hand is good between the parties.    The same doctrine is announced in *Williams* v. *Williams*, 34 Pa. St., 312, and in *Walker* v. *Brungard*, 13 Smed. & M., 723.    The appellees' case here described no fraud, and they were *prima facie* entitled to relief; and the court will not allow the defendant to introduce his own fraud into court, as his first step, and present it in a court of equity as an instrument to be used by a court of conscience to defeat a cause apparently without fraud.    He cannot infuse his own fraud into a *prima facie* just cause, with his own hands, and then invoke the maxim of " clean hands " for his antagonist.    The court will not lend its ear to the cry.

From the doctrines laid down in these cases above cited, and many others, it seems clear that the court below rightfully dismissed the cross bill, and denied the ear of the court to a defendant for the purpose of setting up his own fraud in his own defense, and tried the issue between the parties as to the indebtedness put in issue by the pleadings, and that even if the deed of trust was given by appellant to defraud his creditors, and appellees were aware of it and consented to it, the deed was good, as between the parties, for the amount due appellees, and could only be set aside at the instance of the defrauded creditors, if at all.

Appellant's counsel cites *Walton* v. *Tusten*, 49 Miss., 576,

and 8 Am. & Eng. Enc. L., 771, but it is held in both that a fraudulent conveyance is good between the parties. The cases cited by him in proof that fraud will avoid every contract were prosecuted by injured creditors, and do not apply in this case. Counsel for appellant refers us to Chitty on Contracts (2d ed.), p. 1035, to show that fraud renders a contract voidable *ab initio*, both at law and equity—a principle that is not disputed; but the contract is voidable at the instance of an innocent party not a participant. In the same book, two pages further on, page 1037, it is laid down as follows: "It is not competent to the person who was guilty of the fraud, to avoid the contract on the ground thereof. So that where a contract is fraudulent, it may be valid as between the parties thereto, although void so far as it affects the rights of others." The authorities are abundant and uniform on the line of those cited in this opinion.

The court below heard and saw the witnesses testify, and, upon full investigation and deliberation, found that the note secured by the deed of trust was a valid debt, and so decreed that it should be paid. We do not find in the record in this case sufficient grounds to induce this court to disturb the final decree. The decree of the court below is therefore

*Affirmed.*

WHITFIELD, J., specially concurring. I concur in the result reached, agreeing with the chancellor on the facts. I express no opinion on the other points.