## FIDELITY & DEPOSIT CO. OF MARY-LAND v. LOVELL et al.

### No. 1536.

United States District Court
S. D. Mississippi, Jackson Division.
Nov. 7, 1952.

William H. Watkins, Sr., of Watkins & Eager, Jackson, Miss., for plaintiff.

Forrest B. Jackson, Jackson, Miss., for defendants Lovell.

James L. Spencer, of Watkins, Edwards & Ludlam, Jackson, Miss., for intervenor Deposit Guaranty Bank & Trust Co.

Joseph E. Brown, U. S. Atty., by Jesse W. Shanks, Asst. U. S. Atty., Jackson, Miss., for intervenor United States.

THOMAS, District Judge.

This suit was originally filed by the plaintiff against E. E. Lovell and Mrs. Lavinia B. Lovell, seeking judgment against Lovell (a contractor whom it had bonded), and seeking to set aside a deed (for his one-half interest in the homestead) from Lovell to Lavinia B. Lovell, his wife, dated November 19, 1948. Also named as a defendant was H. V. Watkins, trustee for the Deposit Guaranty Bank & Trust Company, to which, on February 10, 1950, the Lovells had mortgaged the homestead under deed of trust. Amendments were later filed which broadened the plaintiff's demands, as will be hereinafter shown.

Subsequently, the United States intervened to assert the priority of its tax liens against Lovell over the claims sought to be asserted by the plaintiff, the trustee and the bank. Whereupon, the Deposit Guaranty Bank & Trust Company intervened to protect its claim to certain stock pledged on the personal note of Mrs. Lovell.

The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,-000, and diversity of citizenship exists among the parties.

The plaintiff, which will hereinafter be called the bonding company, is a corporation engaged, among other things, in the business of becoming surety on combination performance and labor-and-material payment bonds in the State of Mississippi and elsewhere. The defendant, E. E. Lovell, during the years involved, was engaged in the contracting business in the State of Mississippi.

Between March 3, 1947, and July 12, 1948, the bonding company became surety on five such performance bonds and two tax bonds for E. E. Lovell. The performance bonds in each case were conditioned on the performance of the contract and for payment of claims for labor and materials. The sales tax bonds obligated Lovell and the bonding company to pay the State of Mississippi the amount of tax due by Lovell to the State on each contract which he obtained in the State of Mississippi.

As is customary in such cases, prior to becoming surety on any of the bonds, the bonding company required a financial statement from Lovell. The financial statement made by Lovell was incorrect in many instances, one of which was that the statement, dated December 31, 1946, showed that Lovell owned 400 acres of land in Jefferson Davis County, Mississippi, together with certain stocks and bonds. Mr. Lovell testified that the statement was incorrect, but attempted to explain this as well as other inaccuracies.

In the application for each bond, Lovell expressly agreed to hold the bonding company harmless and to indemnify it against all liability of every kind sustained by it as the result of becoming surety upon said bond, as well as for costs, expenses, and attorney's fees.

On November 3, 1947, one Thomas G. Hardy and wife executed a deed to Mr. and Mrs. Lovell, conveying certain property in Hinds County, Mississippi, to the Lovells, which the Lovells since that date have occupied as their homestead. In the purchase of this property the Lovells made a cash payment of $6,525, and borrowed $8,000 from the First (Capital) National Bank of Jackson, Mississippi, the total pur-

chase price being $14,525. The loan was secured by a deed of trust on said property. Both Mr. and Mrs. Lovell testified that the cash payment of $6,525 was made from Mrs. Lovell's funds, though this testimony was not substantiated, and, in fact, was largely, if not entirely, disproved.

On the 12th of November 1948, the bonding company received notice from creditors of unpaid claims incurred by Lovell for labor and material on at least one of the bonded projects. The bonding company immediately contacted Mrs. Lovell, but no satisfactory arrangements were made by Mr. Lovell to take care of these claims.

On November 19, 1948, Mr. Lovell conveyed to his wife his undivided one-half interest in the property which he and Mrs. Lovell had acquired from the Hardys. Mr. Lovell also, under date of October 30, 1948, transferred to Mrs. Lovell one hundred shares of stock which he owned in the Flowood Corporation.

From and after November 1948, Mr. Lovell did not meet his obligations nor complete the bonded contracts, but, on the contrary, virtually, if not entirely, abandoned them; and the bonding company ultimately sustained a loss under these bonds of approximately $40,000.

Shortly after it received, on November 12, 1948, the above-mentioned notice from creditors, the bonding company, as it had a right to do under the terms of the bonds, then gave notice to each obligee, stopping Lovell's retainage and requiring all future payments under the contract to be made to Lovell and the bonding company jointly. As these payments were made, the funds were deposited to a bank account, and all checks drawn thereon required the signature of the bonding company's attorney and of Lovell's attorney. No checks were drawn against this account except in payment of claims which were approved in writing by Lovell.

At the time Lovell became financially embarrassed, he owned quite a bit of heavy road machinery, all of which was heavily mortgaged. Much of this machinery was subsequently used in performing small contracts for third parties under the supervision of Lovell. Checks were issued to Lovell in payment of the work, many of which were endorsed by Lovell over to Mrs. Lovell, and by her either cashed or deposited in her bank account. It is the contention of the plaintiff that this was, in effect, Lovell's doing contract work on his own behalf, in payment for which he received money which should inure to the benefit of creditors, but which instead was illegally passed from Lovell to his wife. It is the contention of the Lovells that the contracts were obtained by Mrs. Lovell, as Mr. Lovell was in such bad financial condition that no one would contract with him; that it was Mrs. Lovell who financed the obtaining of these contracts and furnished the necessary backing in order that the contracts could be fulfilled; and that payment made pursuant to such fulfillment was in fact her money and not Lovell's. The court is of the opinion that, as to this aspect of the case, the evidence upholds plaintiff's contention, and is insufficient to sustain the contention of the Lovells.

When Lovell was unable to obtain further financing from the First National Bank, he changed banks and commenced doing business with the Deposit Guaranty Bank & Trust Company, of Jackson, Mississippi. The deed of trust on the homestead at that time was in the approximate amount of $6,000. The Deposit Guaranty Bank & Trust Company (as trustee for the R. V. Powers Foundation) paid off this deed of trust to the First (Capital) National Bank, taking from Mrs. Lovell (she then having record title to the property) a deed of trust on the property as security, and naming H. V. Watkins trustee for the Bank. (Under the laws of Mississippi, it was necessary that Mr. Lovell join in the execution of this deed of trust.) There was no evidence that the Guaranty Bank had any knowledge of fraud.

After the passing of the deed from Lovell to Mrs. Lovell for his undivided one-half interest in this property, the United States placed on record certain notices of taxes due against Mr. Lovell. The government, an intervenor in this case, contends, along with the plaintiff, that the conveyance from Lovell to Mrs. Lovell on

November 19, 1948, is fraudulent as to creditors and should be set aside. The government also contends that it has a lien for unpaid taxes against Lovell's undivided one-half interest which comes ahead of the claim of the plaintiff and also of the lien of the Deposit Guaranty Bank & Trust Company (as trustee for the R. V. Powers Foundation.)

As between the plaintiff and the Lovells, the pleadings and proof in this case present four main questions, the decision of which will dispose of the issues. First, is whether or not the defendant E. E. Lovell is indebted to the plaintiff and, if so, in what amount. The second, is whether or not the deed from E. E. Lovell to Mrs. Lovell, dated November 19, 1948, was fraudulent and should be set aside. The third, is whether or not stock in the Flowood Corporation, transferred from E. E. Lovell to his wife, is subject to the plaintiff's demand. And the fourth, whether or not any other assets of Mr. Lovell were fraudulently transferred to Mrs. Lovell; and, if so, is plaintiff entitled to a judgment against Mrs. Lovell; and in what amount.

The question whether or not Lovell is indebted to the United States for unpaid taxes is not at issue, as it is admitted by all that he is, in the aggregate amount of $8,955.12, together with interest as set forth in the government's cross claim.

It is also admitted that the Lovells are indebted to the Deposit Guaranty Bank & Trust Company (as trustee for the R. V. Powers Foundation) in the amount of $4,-000, together with interest thereon at the rate of 5½% per annum from the 10th day of February 1952 until paid; and that Mrs. Lovell is indebted to the Guaranty Bank & Trust Company on her promissory note dated August 29, 1951, in the amount of $1,150, together with interest thereon at the rate of 5½% per annum from the 20th day of March 1952 until paid.

Assuming that question number one above is decided in the affirmative, then it remains to be decided, as between the plaintiff and the bank and the government, which claims against Lovell take precedence.

■ 1. Is the defendant E. E. Lovell indebted to the plaintiff, and, if so, in what amount?

The proof shows that the plaintiff became surety for Lovell on the contracts in question. Each contract between the plaintiff and Lovell, which consisted of the application, the bond, and the financial statement, expressly provided that Lovell would hold the bonding company harmless for any loss which it sustained. In my opinion, the proof supports plaintiff's contention that it sustained a loss in the amount of $43,219.83 as a result of becoming surety for Lovell on the contracts.

It is elementary in the law of principal and surety that under such contracts the surety can recover of the principal such loss as it legally suffers because of the relationship. Accordingly, the plaintiff is entitled to a judgment against E. E. Lovell in the amount of $43,219.83, plus interest at the rate of 6% from the date of the filing of the original complaint in this cause, together with all costs herein.

2. Was the deed, dated November 19, 1948, from E. E. Lovell to Mrs. Lovell, purporting to convey to her his undivided one-half interest in certain property, fraudulent? If so, it should be set aside.

■ The defendants Lovell contend that, inasmuch as none of the claims for which the plaintiff became liable were actually paid prior to November 19, 1948, Lovell was not indebted to the plaintiff at the time of the transfer. I think it plain that the rights of the plaintiff as a creditor date back to the date of the execution of the bond, and as of such date the plaintiff stood in the position of a creditor of Lovell. The proof unquestionably shows that all of the bonds were executed prior to November 19, 1948. In the case of Loughridge v. Bowland, 52 Miss. 546, it was stated:

"When Bowland became bound as surety, there sprang up at once the contingent liability to him on the part of Chears, that if he paid the debt then Chears would indemnify or reimburse. The contingent undertaking became absolute on the act of payment, but it

existed all along. Upon that theory of responsibility, the courts have determined that the surety was a creditor of the principal within the statute of frauds, from the moment he engages for him."

To like effect is the case of Washburn v. Blundell, 75 Miss. 266, 22 So. 946; and many other Mississippi cases. The relationship of debtor-creditor between the plaintiff and Lovell dated from the date of the execution of the bond.

 Plaintiff urges the proposition that the conveyance dated November 19, 1948, from E. E. Lovell to Mrs. Lovell, is presumed to be fraudulent, and that the burden of proof rests upon the Lovells to overcome this presumption. I cannot agree with this contention. I have carefully read the case of Ham v. Ham, 146 Miss. 161, 110 So. 583, but do not believe that it is in point. I think the better rule is that stated in 37 C.J.S., Fraudulent Conveyances, § 252, page 1085:

"Transactions between husband and wife will be viewed with suspicion and, to prevent fraud as to creditors, they will be closely scrutinized to see that they are fair and honest."

In view of the circumstances shown by the testimony, I am of the opinion that the conveyance was fraudulent and should be set aside. As I have stated, I do not believe the transaction is presumed fraudulent and that the burden rests upon the Lovells to disprove this; but I do believe that here the plaintiff has definitely proven that the transaction was fraudulent. The fact that misstatements were made in the financial statement given to the plaintiff; the fact that claims against Lovell were filed with the plaintiff on November 12, 1948; the fact that plaintiff immediately contacted Mrs. Lovell, requesting that Mr. Lovell communicate with it; the fact that Mr. Lovell did not so communicate; the fact that the conveyance was without consideration; the fact that it was between husband and wife, both of whom were familiar with his financial condition; the fact that within seven days after claims were filed, the conveyance took place; the fact it was

withheld from recording for some time; the fact that after the transfer Lovell did not have sufficient remaining property with which to pay his debts—all, in my opinion, are badges of fraud which are not explained, and I think warrant the finding that the conveyance was a fraudulent one. Inasmuch as it was fraudulent, it should be set aside. Section 1327, Code of Mississippi 1942; Richards v. Vaccaro & Co., 67 Miss. 516, 7 So. 506; Hodges v. Hickey, 67 Miss. 715, 7 So. 404; and other cases.

3. It is my opinion that the transfer of stock in the Flowood Corporation from Mr. Lovell to Mrs. Lovell is in the same status as is the attempted transfer of real property. I am of the opinion that this transfer (under date of October 30, 1948) was fraudulent. The authorities cited in Proposition 2 above apply with equal force here.

4. I have carefully considered the facts leading up to the transfer of funds from Mr. Lovell to Mrs. Lovell, subsequent to the real estate conveyance of November 19, 1948. In considering this phase of the controversy, I have given thought to the possible application here of the case of Most Worshipful Grand Lodge of Alabama, A. F. & A. M. v. Allen, 208 Ala. 292, 94 So. 343, 28 A.L.R. 1043; as well as the case of Buckley v. Dunn, 67 Miss. 710, 7 So. 550.

 I cannot agree with counsel for the defendants Lovell, that these two cases are in point. In the Allen case, the corpus which was the source of the earnings was the corporation, Johnson-Allen Undertaking Company, a large portion of the stock of which was owned by Josephine Allen, and to the management of which Clarence Allen donated his services. In the instant case, the corpus which was the source of the revenue was the heavy road equipment which, though mortgaged, was the property of Mr. Lovell and not Mrs. Lovell. I do not think the facts justify a finding that in these transactions it was Mrs. Lovell who did the contracting and who was actually in business.

It is my conclusion from the facts that in each of these instances Mr. Lovell entered into the contracts, supervised their fulfillment, used his own equipment in their

fulfillment, and was paid for what he contracted to do, and not for what Mrs. Lovell contracted to do. I am of the opinion that it was his money, and that he passed it to Mrs. Lovell's account in an effort to alienate it and place it beyond the reach of ordinary process by his creditors, and these transfers were thereby a fraud on his creditors. It is apparent from the testimony that, during the periods of time in which Mr. Lovell was placing this money to the account of Mrs. Lovell, she was aware of his financial condition, and also knew that he was placing this money to her account; and therefore she was charged with knowledge that the transactions were in an effort to place the money beyond the reach of ordinary process of her husband's creditors. Consequently, a judgment against her for the amount which she acquiesced in his fraudulently transferring to her should be entered.

■ I cannot agree with the contention of the plaintiff as to the amount. The amount which, in my opinion, was transferred is $5,000. Consequently, the judgment will be in that amount, plus interest at the rate of 6% per annum from date of judgment.

The next proposition presented is the standing in this litigation of the Deposit Guaranty Bank & Trust Company (as trustee for R. V. Powers Foundation), under deed of trust dated February 10, 1950. When the property in question was originally purchased by the Lovells from the Hardys, the First (Capital) National Bank of Jackson, Mississippi, furnished $8,000 of the purchase price under deed of trust. There is no contention, and certainly no evidence to the effect, that the First National, at the time the deed of trust was made, did not have a good and valid first lien upon the property. While the deed of trust remained in the First National, some payments were made, thus reducing its amount. The Lovells finally reached the point where the payments could not be met and the mortgage under the deed of trust was in danger of being foreclosed by that bank.

■ Mrs. Lovell then went to the Deposit Guaranty Bank, and borrowed sufficient money from it for the express purpose of paying off the mortgage at the First National, and reducing the subsequent monthly payments. Both Mr. and Mrs. Lovell executed a new deed of trust to the Deposit Guaranty Bank & Trust Company (as trustee for R. V. Powers Foundation), covering their homestead. It is admitted by all persons that the Deposit Guaranty Bank had no knowledge or reason to believe that the conveyance between Lovell and Mrs. Lovell of November 19, 1948, was fraudulent. Consequently, the Deposit Guaranty Bank, so far as the lien on this property is concerned, in my opinion, was subrogated to the First National, and succeeded to its rights; and the Deposit Guaranty Bank & Trust Company (as trustee for R. V. Powers Foundation) has against said property a good and valid lien, which comes ahead of the claims of all of the other parties litigant. Bigley v. Jones, D.C., 64 F.Supp. 389; Ingram v. Jones, 10 Cir., 47 F.2d 135. The lien of the Bank (as trustee) is in the amount of $4,000.

■ The facts disclose that the Flowood Corporation stock was also pledged as security for a loan. Consequently, the Bank's lien on this stock is ahead of the claims against said stock of all the other parties litigant.

■ The government insists that by virtue of Section 3670 of Title 26 U.S.C.A. its claim to Lovell's undivided one-half interest in the homestead comes ahead of the claim of the bonding company. Section 3670 provides in substance as follows: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (* * *) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 3671 of Title 26 provides in effect that the lien created by Section 3670, supra, arises at the time the assessment list is received by the Collector. At the times the various assessment lists were received by the Collector (and notice of tax liens re-

corded) Lovell had no interest in the homestead, as he had divested himself of title by deed of November 19, 1948, to his wife. It will be noted that Section 3670 gives the lien only on property "belonging to such person."

The government further insists that, inasmuch as the plaintiff is contending that the conveyance of November 19, 1948, from Lovell to his wife was fraudulent, the plaintiff cannot in the next breath circumvent Section 3670, supra, by claiming that the fraudulent deed divested Lovall of his title. The government cites the cases of Thomason v. Neeley, 50 Miss. 310; Shaw v. Millsaps, 50 Miss. 380; and Pulliam v. Taylor, 50 Miss. 551; to the effect that as to fraudulent conveyances, "the creditors may treat the fraudulent conveyance as if never made and the title as in the grantor."

I do not agree that this principle is controlling here. I think the more logical reasoning in applying the law to the facts in this case is found in Section 116, under the title "Fraudulent Conveyances", in Volume 24, American Jurisprudence, page 265, where it is said:

"The fact that a conveyance or transfer of property may be fraudulent as to creditors of the transferrer or as to other third persons does not affect its validity as between the parties to the transaction. Except as against such protected persons, the transferee becomes vested with such ownership and title as the transferrer possessed and purported to convey. Even as against creditors, the conveyance is merely *voidable at their option*. Unless the latter protect themselves by *pursuing the prescribed course* by which alone the property can be made available for the satisfaction of debts, the transaction will be treated as valid." (Emphasis mine.)

Hence, we find the deed from Lovell to his wife not void, but voidable at the option of creditors. We next find the bonding company pursuing the prescribed course by coming into this court seeking to exercise the right given it under Section 265, Title 2, Chapter 7, of the Code of Mississippi; that is, to have the deed declared fraudulent

and set aside. It must be borne in mind that up to the time suit was filed by the bonding company, and for many months thereafter, the government took no steps whatsoever to assert its tax liens by attacking as fraudulent the conveyances of Lovell to Mrs. Lovell.

 It is the contention of the government that, under Section 191 of Title 31 U.S.C.A., it has a claim against Lovell which is of a higher dignity than that of the bonding company. Section 191, which for the sake of brevity will not be here quoted, in my opinion applies only as between creditors of the same degree, which is not the case on hand. This section does not give the United States a lien, but only a priority of payment out of the property or assets of the insolvent debtor in certain instances. The fact that one has a priority of payment does not, of itself, give one a lien. As between a lien and a priority of payment, obviously the lien is of the greater dignity.

In my opinion, at the time of the conveyance of November 19, 1948, both the government and the bonding company were, in so far as Lovell was concerned, merely creditors of equal standing. But, as stated above, the conveyance was voidable at the option of these two creditors of equal standing, and the conveyance is treated as valid until one of them protected itself by "pursuing the prescribed course." We must then see what is the effect, if any, upon one creditor's "pursuing the prescribed course."

Section 1327 of the Code of Mississippi of 1942 provides in part, "Creditors may attack fraudulent conveyances, etc.—The said court shall have jurisdiction of bills exhibited * * * to set aside fraudulent conveyances of property * * *. Upon such a bill a writ of sequestration or injunction, * * * may be issued * * *. The creditor in such case shall have a lien upon the property described therein *from the filing of his bill,* except as against bona fide purchasers before the service of process upon the defendant in such bill." (Emphasis mine.)

The bonding company filed its bill in this case on the 20th day of September 1950,

which was one month after the last of the tax lien notices was filed by the Collector of Internal Revenue in the chancery court of Hinds County, Mississippi, against E. E. Lovell, but more than twelve months before the United States intervened in this suit on December 10, 1951. At the time suit was filed by the plaintiff in this cause, it ceased to be a mere creditor of Lovell, of equal standing with the government in so far as the right to set aside the conveyance of November 19, 1948, was concerned; and plaintiff's claim, upon the filing of the suit, by virtue of Section 1327 of the Code of Mississippi of 1942, was merged into a lien against Lovell's fraudulently conveyed one-half interest in the homestead, which lien would definitely take precedence over any priority which the government might later attempt, and in this case unsuccessfully, to assert.

However, this gives rise to another proposition, namely, what effect, if any, does the Mississippi homestead exemption law have on the claim of the government and the claim of the bonding company?

The cases uniformly hold that state exemption laws do not protect property from the incidence of federal taxation. McCulloch v. Maryland, 4 Wheat. 316, 434, 4 L.Ed. 579; United States v. Dallas Nat. Bank, 5 Cir., 152 F.2d 582; Smith v. Donnelly, Collector of Internal Revenue, 65 F. Supp. 415; Shambaugh v. Scofield, 5 Cir., 132 F.2d 345; and many other cases.

The fact that the claim of the bonding company is subject to the state exemption laws is so apparent that it requires no citations.

It is argued by the government that, since the homestead exemption laws of the State of Mississippi were amended on April 15, 1950, increasing the exemption of $3,000 to $5,000, the government would be entitled to the first $5,000 derived from the sale of Lovell's one-half interest in the property.

I do not agree with this contention. Section 10 of Article I of the Constitution of the United States provides in part: "No State shall * * * pass any * * * Lawq impairing the Obligation of Contracts, * * *." The contract between Lovell and the bonding company was entered into at the time the bonds were executed, and from that date on, until the termination of the contract, there existed the relationship of debtor-creditor. At the time these contracts were entered into, the homestead exemption laws of the State of Mississippi provided an exemption in the amount of $3,000. It is evident that the contract was entered into in contemplation of the then existing applicable laws, both statutory and otherwise. To permit the subsequent amendment of the homestead exemption laws to work a modification of the contract would, in my opinion, contravene Section 10, Article I of the Constitution.

Judgment will be entered in accordance herewith.