UNITED STATES
v.
FIDELITY & DEPOSIT CO. OF
MARYLAND et al.
No. 14604.

United States Court of Appeals,
Fifth Circuit.
July 6, 1954.

Carolyn R. Just, Ellis N. Slack, A. F. Prescott, Fred E. Youngman, Special Asst. to the Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Joseph E. Brown, U. S. Atty., Jackson, Miss., Jesse W. Shanks, Asst. U. S. Atty., Jackson, Miss., for appellant.

William E. Suddath, Jr., James L. Spencer, W. H. Watkins, Sr., Forrest B. Jackson, Jackson, Miss., for appellee.

P. H. Eager, Jr., Thomas H. Watkins, Jackson, Miss., for appellee, Fidelity & Deposit Co. of Maryland.

Watkins, Edwards & Ludlam, Jackson, Miss., for appellee, Deposit Guaranty Bank & Trust Co. of Jackson, Miss., Deposit Guaranty Bank and Trust Co. of Jackson, Miss., as trustee for the R. V. Powers Foundation, and H. V. Watkins, Trustee for Deposit Guaranty Bank & Trust Co. of Jackson, Miss., trustee for R. V. Powers Foundation.

Before BORAH, and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

BORAH, Circuit Judge.

Fidelity & Deposit Company of Maryland, hereinafter called the bonding company, brought this action in the United States District Court for the Southern District of Mississippi against E. E. Lovell and Mrs. Lavinia B. Lovell, his wife, seeking a judgment against Lovell, a contractor whom it had bonded, and seeking to set aside a deed (for his one-half interest in the homestead) from Lovell to his wife, dated November 19, 1948. Also named as a defendant was H. V. Watkins, trustee for the Deposit Guaranty Bank & Trust Company of Jackson, Mississippi, to which on February 10, 1950, the Lovells had mortgaged the homestead under deed of trust. By subsequent amendments to the complaint, first the Collector of Internal Revenue, and then in his stead the United States, was made a defendant. The complaint as amended broadened the original demands of plaintiff, and in a corresponding prayer for relief the court was additionally asked to set aside a transfer by Lovell to his wife of certain shares of stock in the Flowood Corporation and to grant unto plaintiff a personal judgment against Mrs. Lovell for the value of the stock if she had disposed of the same as well as for all sums of money transferred to, given to, or deposited by Lovell for the benefit of his wife. Subsequently, and upon motion of the plaintiff, the United States was dismissed as a party defendant without prejudice. Thereafter, the United States was permitted to intervene and file an answer and cross-claim, wherein it asserted that its tax liens against Lovell were prior and superior to any lien asserted by plaintiff, the trustee and the bank. It also alleged that the conveyance from Lovell to his wife of November 19, 1948, was made without consideration, was fraudulent as to creditors and should be subjected to the payment of the claim for unpaid taxes owing to the United States. The Deposit Guaranty Bank & Trust Company thereupon intervened to protect its claim to certain shares of Flowood Corporation stock pledged on the personal note of Mrs. Lovell.

Issue was joined and the cause came on for trial. At its end and after considering the evidence, the District Court found and held in substance the following: (1) that the conveyance by E. E. Lovell to his wife of his undivided one-half interest in the homestead was fraudulently made as to the Fidelity & Deposit Company of Maryland and the United States of America as creditors of E. E. Lovell, and that the same should be set aside and said property sold subject to the payment of his debts; (2) that the Deposit Guaranty Bank & Trust Company, as trustee for R. V. Powers Foundation, had a good and valid deed of trust on the homestead of E. E. Lovell and his wife to secure an indebtedness of $4,000 still owed to it; that, subject to such indebtedness, the bonding company, as institutor of this suit, has (exclusive of the homestead exemption) the right to priority of payment from the proceeds of E. E. Lovell's one-half interest which had been fraudulently conveyed; and that as to the homestead exemption, the first three

thousand dollars which was not subject to execution to satisfy the bonding company's judgment, the United States was entitled to be first paid; (3) that the conveyance by E. E. Lovell to his wife of one hundred shares of Flowood stock was fraudulently made as to the creditors of E. E. Lovell, and should be set aside, and said property should be subjected to the payment of his debts; that there was owing to the Deposit Guaranty Bank & Trust Company the sum of $1,150, secured by a pledge of said stock, and that subject to such secured indebtedness the bonding company, as institutor of this suit, has the right of priority of payment from the proceeds of the stock; (4) that E. E. Lovell fraudulently transferred to his wife various sums of money aggregating $5,000, which transfers should be set aside in favor of the bonding company, as creditor of E. E. Lovell; and (5) that E. E. Lovell was indebted to the bonding company in the sum of $43,219.83, for which amount it entered judgment in favor of the bonding company; and that E. E. Lovell was indebted to the United States for unpaid taxes, as claimed, in the amount of $8,955.12 together with interest and the court entered judgment in favor of the United States for the full amount.

From that part of the judgment awarding priority in payment out of the property involved to the bonding company over the debts due the United States for unpaid taxes, and from that part of the judgment holding the debt of $4,000 due Deposit Guaranty Bank & Trust Company, secured by deed of trust dated February 10, 1950, is entitled to priority in payment over tax claims of the United States secured by liens which had arisen and been duly recorded prior to execution of the deed of trust, the United States has appealed.

The first of three questions presented on this appeal is whether the District Court erred in holding that the lien of the bonding company under the laws of the State of Mississippi is superior to tax liens of the United States which arose and were duly recorded prior to the institution of the suit on which the lien of the bonding company was based. Insisting that this question must be answered in the affirmative the Government argues that the federal tax liens here involved arose and were duly recorded before the bonding company acquired its lien under Mississippi law[1] as institutor of this suit. That while the tax liens of the United States arose and were recorded after E. E. Lovell had fraudulently conveyed to his wife the property here involved, the Government, although it did not then have a statutory lien for its taxes, was as much a creditor of E. E. Lovell as was the bonding company at the time the conveyances were made and thus clearly is within the protection of Section 265 of the Mississippi Code. Under that section the fraudulent conveyances were "clearly and utterly void" as to creditors and there is no authority either in the Mississippi Code or in the decisions of the Mississippi Supreme Court to prevent the federal tax liens from attaching to the property thus transferred at the time the liens arose. In any event and regardless of whether the fraudulent transfers here involved be considered "clearly and utterly void" as declared by the statute, or merely voidable at the option of creditors as held by the court below, any rights of the bonding company were wholly derivative, and since the tax liens of the United States attached also to any after acquired property they attached to any property or rights to property derived through the taxpayer after the liens arose. Finally it is argued that there is no provision of federal law which would warrant recognizing the lien of the bonding company as superior to the tax liens of the United States.

The right of the United States to priority of payment of debts due it does

---

1. Mississippi Code Annotated, 1942 ed., Volume 1, § 1327.

not stand on any sovereign prerogative, but is exclusively founded upon the actual provisions of its statutes. Appellant concedes that the bonding company upon the filing of its bill on September 20, 1950, acquired a lien under Section 127 of the Mississippi Code against the property fraudulently transferred by the taxpayer to his wife. However, and by virtue of Section 3670 of the Internal Revenue Code,[2] it insists that the tax liens of the United States which arose and had been duly recorded prior to the filing of the bill were superior in right to the lien of the bonding company.

Section 3670 provides in pertinent part as follows: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, *belonging to such person*." (Emphasis supplied.) Section 3671 of the Internal Revenue Code provides that the lien under Section 3670 "shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

 It is plain from the language of the statute that the tax liens of the United States attached to all property and rights to property of the taxpayer at the time the several assessment lists were received by the Collector of Internal Revenue. It is equally plain, and the Government readily concedes the fact, that the federal tax liens arose and were recorded long after the taxpayer had conveyed to his wife the property here involved. It thus affirmatively appears that the taxpayer had parted with

all right, title and interest to the property in question before the tax liens of the United States arose.[3] Under Mississippi law, Lovell not only had no interest in the land from and after the execution of the deed to his wife but he had no reversionary[4] interest of any kind therein and he was estopped[5] to assert or acquire any such interest. Under Section 265 of the Mississippi Code it has consistently been held that a fraudulent conveyance is void "only" against creditors but valid as between the grantor and grantee. Or, as the Supreme Court of Mississippi said[6] in quoting approvingly from a Massachusetts case it " 'is good between the parties, and void as against creditors only, or, to speak accurately, is voidable by creditors at their election.' "

When the tax liens were filed Lovell had parted with all interest in the property which he had conveyed to his wife and he never thereafter acquired any interest therein. Indeed the statute prohibited him from doing so. Consequently appellant did not then acquire a lien on property in which the taxpayer had no interest but only acquired a right to set aside the conveyance from Lovell to his wife as a fraudulent conveyance. Its position was that of an ordinary creditor seeking to recover an unsecured claim. It was an unsecured creditor just as appellee was when it filed its original bill of complaint on September 20, 1950.

Appellee filed its bill to subject the property involved to the payment of its debt more than a year before the court permitted appellant to intervene in that proceeding and assert a lien upon the property and also the rights of a creditor. And by virtue of Section 1327 of the Mississippi Code[7] appellee obtained

---

2. 26 U.S.C.1946 ed., § 3670.

3. Martin v. Tillman, 70 Miss. 614, 13 So. 251.

4. Williamson, to Use of Cox v. Wilkinson, 81 Miss. 503, 33 So. 282.

5. Meyers v. American Oil Co., 192 Miss. 180, 186, 187, 5 So.2d 218.

6. Barwick v. Mayse, 74 Miss. 415, 21 So. 238, 239.

7. Mississippi Code, Annotated (1942 ed.) Vol. 2, § 1327 provides in part: "Creditors may attack fraudulent conveyances, etc.—The said court shall have jurisdiction of bills exhibited by creditors * * * to set aside fraudulent conveyances of property, * * *. Upon such a bill a

a lien upon the property as of the date of the filing of the bill which would antedate and take preference over the counterclaim filed by the appellant. In Kline v. Sims, 149 Miss. 154, 114 So. 871, 873, the Supreme Court of Mississippi in construing Section 1327, supra, said:

> "We think the creditor who proceeds under this statute is entitled to the benefit of his diligence, and that, under the language of the statute, he has a lien upon the property sold on this sequestration. He is not required to bring suit on behalf of all the creditors, but may sue for his own demand and get the benefit of his diligence. Creditors who will not act, or who are not diligent in asserting their demands, are not entitled to participate equally with the man who is diligent, and who has incurred the risk and expense of proceeding to attack a fraudulent conveyance. If other creditors intervene in the suit, they may, by so doing, take their places in line with creditors according to the date of their proceedings, but they are not entitled to share in the proceeds of the first creditor's diligence and activities, and such creditor is entitled to have his claim first paid. If other creditors desire, they may attack, or sue out writs of sequestration, or take any other appropriate action; but they must do so at their own risk, and they are not entitled to participate in the activities and diligence of the creditor who first takes action."

Appellant's second point relates to the claimed error on the part of the District Court in holding that the debt due the Deposit Guaranty Bank & Trust Company, secured by a deed of trust on the real property here involved, is entitled to a priority of payment out of proceeds from the sale of the property over those taxes due the United States secured by tax liens which arose and had been recorded prior to execution of the deed of trust to the bank.[8]

During the year 1947 E. E. Lovell and his wife acquired the property in question at a cost of $14,525, of which $6,525 was paid in cash and the unpaid balance of $8,000 was secured by a deed of trust on the property in favor of the First (Capital) National Bank of Jackson, Mississippi. After Lovell had encountered financial difficulties and after he had conveyed his one-half interest in the property to his wife it became necessary because of a threatened foreclosure of the deed of trust to refinance this obligation which by that time had been reduced to approximately $6,000. Accordingly, on February 10, 1950, Lovell and his wife executed a new deed of trust on the property in favor of the Deposit Guaranty Bank & Trust Company in the amount of $6,000 and this instrument was recorded on February 13, 1950. The proceeds of the new loan, at least in material part, were used to pay off the previous deed of trust to First National Bank.

In the meantime, and prior to the execution of the deed of trust to Deposit Guaranty Bank & Trust Company, the Collector had on March 28, 1949, filed notice of lien covering assessments of withholding tax and Federal Insurance Contributions Act taxes, together with penalties and interest thereon, for the second, third, and fourth quarters of 1948 in the aggregate amount of $5,823.67; and had, on April 28, 1949, filed notice of lien covering the original assessment of Federal Employment Tax Act, penalty and interest for 1948 in the

---

writ of sequestration or injunction, or both, may be issued * * *. The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against bona fide purchasers before the service of process upon the defendant in such bill."

8. The lien of Fidelity & Deposit Company of Maryland arose on September 20, 1950, with the filing of its complaint in the state court action, which was subsequent to the execution of the deed of trust to Deposit Guaranty Bank & Trust Company on February 10, 1950.

amount of $235.95. At the time this action was brought the Lovells were indebted to the Deposit Guaranty Bank & Trust Company in the amount of $4,000 together with interest thereon at the rate of 5½% per annum from the tenth day of February 1952 until paid.

The record standing thus, the district judge without passing upon or deciding the relative rights of the Deposit Guaranty Bank & Trust Company under its deed of trust and of the United States under its prior recorded tax liens, held that "the Deposit Guaranty Bank, so far as the lien on this property is concerned * * * was subrogated to the First National, and succeeded to its rights; and the Deposit Guaranty Bank & Trust Company (as Trustee for R. V. Powers Foundation) has against said property a good and valid lien, which comes ahead of the claims of all of the other parties litigant."

We think the court erred in applying the doctrine of subrogation but nevertheless reached the right conclusion in holding that the mortgage of Deposit Guaranty Bank & Trust Company was superior to the liens for taxes. The Deposit Guaranty Bank did not acquire nor did it in any manner succeed to the rights of First National Bank under the 1947 deed of trust to it. On the contrary, the Deposit Guaranty Bank entered into a new and separate loan agreement with Lovell and his wife and it took a new trust deed in its favor as security for repayment of its loan. The lien of First National was paid off and discharged, it was not transferred, and the Deposit Guaranty Bank did not thereby succeed to the lien rights of First National. However, there is and can be no doubt that the bank did acquire a good and valid mortgage lien of its own upon property the title to which was vested in Mrs. Lovell at the time she executed the deed of trust. Prior to the time of the institution of suit by the Fidelity & Deposit Company of Maryland there was no record or actual suggestion to the Deposit Guaranty Bank and Trust Company that the conveyance from Lovell to his wife was fraudulent. The Deposit Guaranty Bank was a bona fide mortgagee of Mr. Lovell because it was without notice, either actual or constructive, of the fraudulent nature of the conveyance by which she secured her title. We conceive the Mississippi law [9] to be that a bona fide purchaser or mortgagee from a grantee who secures title by a conveyance which is afterwards set aside because in fraud of creditors is not charged with the fraud of an antecedent grantor in the chain of title. Until the fraud is established and the instrument set aside a lien recorded against such antecedent grantor in title is not notice to the subsequent bona fide purchaser. Consequently, the mortgage of the bank was superior to the liens for taxes.

Appellant's third and final point that the District Court erred in holding that the United States is not entitled under Section 3466 of the Revised Statutes [10] to priority in payment of its taxes out of the proceeds of the property here involved is not well taken and hardly merits discussion. Our recent opinion in U. S. v. Atlantic Municipal Corporation, 5 Cir., 212 F.2d 709, 711, is dispositive of this issue. There, in speaking of Section 3466 we said: "This statute applies only as against unsecured debts, that is, debts not secured by a specific and perfected lien. It has never been, we think it will never be, applied as it is sought to be applied here, to accord payment to a debt due the United States in preference to a claim secured by a lien which is prior in time and superior in law to the lien of the United States securing the debt for which preferential payment is sought."

For the reasons stated the judgment [11] of the District Court is

Affirmed.

9. See footnote 7.

10. 31 U.S.C.A. § 191.

11. The District Court's opinion is reported as Fidelity & Deposit Company of Maryland v. Lovell, 108 F.Supp. 360.